**WEISS, Internal Revenue Collector, v. MOHAWK MINING CO.**

(Circuit Court of Appeals, Sixth Circuit. March 2, 1920. On Petition for Rehearing, June 15, 1920.)

No. 3360.

1. Internal revenue ☞9—Lessee of mine not entitled to deduction for depletion in computing income tax.

Under Income Tax Act 1916, § 12 (Comp. St. § 6336$l$), permitting a deduction from gross income of a corporation of, "in the case of mines, a reasonable allowance for depletion thereof, not to exceed the market value in the mine of the product thereof which has been mined and sold during the year," the lessee of a mine for a term long enough to enable it to remove all the ore, paying a royalty which is less than the market value of the ore in the mine on March 1, 1913, *held* not entitled to a deduction for depletion, equal to the difference between the royalty on the ore mined during the year and its market value on March 1, 1913.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Internal revenue ⊜⇒9—"Depletion," in Income Tax Act, synonymous with "depreciation."**

The word "depletion," as used in Income Tax Act 1916, § 12 (Comp. St. § 6336*l*), permitting a deduction from gross income of mines of a reasonable allowance for depletion, has reference to the same exhaustion of ore for which allowance has been refused when called sale of capital assets.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depreciate.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Mohawk Mining Company against Harry H. Weiss, Collector of Internal Revenue. Judgment for plaintiff, and defendant brings error. Reversed.

B. B. McGinnis, Sp. Asst. Atty. Gen., of Pittsburgh, Pa., for plaintiff in error.

A. C. Dustin, of Cleveland, Ohio, for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. [1] The Corporation Excise Tax Act of 1909 (36 Stat. 112, c. 6) provided that the taxpayer, in computing taxable income, might make a deduction for depreciation, and a similar provision was contained in the Income Tax Law of 1913 (38 Stat. 114, c. 16). Under these laws, it was adjudged that the taxpayer was allowed to deduct from his receipts in any one year such portion thereof as had come from a sale of the capital assets, in so far as the proceeds represented the value of these capital assets at the beginning of the tax period—January 1, 1909, or March 1, 1913. Doyle v. Mitchell Bros., 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054. It was also adjudged that, owing to the peculiar nature of minerals in the ground, the owner thereof was not entitled to any deduction from his gross income by virtue of the depletion of his capital assets represented by the mining and conversion of these minerals. Von Baumbach v. Sargent Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460. After these questions had become controverted and on September 8, 1916, Congress amended the law so as expressly to provide (section 12, Act Sept. 8, 1916 [Comp. St. § 6336*l*]) that a corporation should ascertain its net income by deducting from its gross income various specified items of expense and maintenance, and all losses sustained during the year, including, "(b) in the case of mines, a reasonable allowance for depletion thereof," etc. This was the law in force, when the controversy in this case arose.[1]

The Mohawk Mining Company was a Minnesota corporation. On March 1, 1913, it was lessee of certain iron mining property. By the terms of the lease, it was to pay the fee owners a royalty of 25 cents per ton, was to pay a certain minimum each year, and was given a term amply long enough to permit extraction of all the ore on the

---

[1] A 5 per cent. depletion charge in case of mines had been provided for in the original act of October 3, 1913; but this was not involved in the cases above cited.

premises. The amount of ore in place March 1, 1913, was known with substantial accuracy, and its value at that time in the ground was known to be, and is stipulated to have been, substantially 50 cents per ton; that is to say, 25 cents per ton in addition to the royalty which must be paid when it was taken out; so that, on its theory, the net operating proceeds of each ton of ore thereafter mined should be credited, 25 cents to royalty account, 25 cents to the capital account as of March 1, 1913, and the balance to profit. In the tax returns made for later periods covered by the operation of the law of September 8, 1916, the Mohawk Company claimed an allowance for depletion on account of the ore taken out during this period, to the extent of this 25 cents excess per ton, being, as it claimed, the value of its interest on March 1, 1913, which had been consumed by the mining operations of the period covered by the return. The commissioner declined to allow this deduction. The Mohawk Company paid under protest, and brought this suit in the court below to recover this payment; and, upon a trial before the court without a jury, all the facts being stipulated, judgment was awarded to the Mohawk Company, against the plaintiff in error, the local collector of internal revenue, for the amount of this tax, being for substantially $35,000.

[2] The only question involved is whether the Mohawk Company, because it is only lessee, is not entitled to the allowance which it is conceded would be rightful if it were the fee owner. Counsel for the taxpayer urge several reasons why this depletion should be allowed to the lessee in some cases as it is in others to the fee owners, among which are that by the words of the statute, the allowance is made to the taxpayer rather than either to owner or to lessee; that it would be natural for Congress to intend such allowance to be made to the party which actually suffered the substantial depletion,[2] and that this, in a case like the present, is the lessee; that the contrary theory necessitates the allowance of the depletion to the lessor, in this and all cases of royalty leases, with the result that while the lessor's only interest in the property is the royalty, and while the royalty is taxable income, the lessor will have a depletion allowance which will wipe out the royalty and leave him with no tax to pay, and this is said to be an absurd result; and that, under the wording of the act and the regulations of the department (in particulars which we have not set out), if the Mohawk Company had bought this lease from a former lessee on the 2d day of March, 1913, for the existing market price of ore in place, it could have had this allowance which it now claims (under the mere subterfuge of calling the purchase price "advance rental"), while the law plainly intends that the owner, on March 1st, and the purchaser on March 2d, of any particular interest, shall be treated alike.

These contentions would deserve serious consideration, if the questions involved were open; but we cannot think that they are. We cannot conceive any substantial distinction as applied to a mine be-

---

[2] By the amendatory act of 1918 (section 234a (9), Comp. St. Ann. Supp. 1919, § 6336⅛pp, not here applicable) it is expressly provided that, in cases of leases, the deduction for depletion of mines shall be equitably apportioned between lessor and lessee.

tween that depreciation or allowance for capital assets consumed which was sought by mine owners under the earlier acts, and that depletion which was expressly allowed by the amendment of 1916. From every point of view, this kind of depreciation or allowance was depletion, and this allowed depletion is depreciation or diminution of capital, and when the question of right to the allowance arises as between fee owner and lessee, it can make no difference whether the claimed allowance is called by one name or by the other. In U. S. v. Biwabik Co., 247 U. S. 116, 38 Sup. Ct. 462, 62 L. Ed. 1017 (arising under the act of 1909), it was ruled, after full consideration, that under a lease, practically identical with the Mohawk lease now involved, the nature of the interest held by the lessee was not such as to permit it to claim the allowance, but that the contingencies which attended the character of the lessee's interest barred it from claiming that its capital assets had been diminished. It is true that the question whether the mining of ore could be considered depreciation in any event was underlying, and that this question has been completely removed by the amendment of 1916; but the Supreme Court did not rest its conclusion at all upon the definition of depreciation.

We do not overlook counsel's argument that the question really involved in the Mitchell and Biwabik Cases was whether the proceeds of a sale of capital assets should be eliminated from the receipts of the year before the gross income was stated, and hence did not reach an allowance of a business loss during the year permitted to be deducted from the gross income, which character the depletion allowance is said to bear; but we think the provision regarding depletion, in real substance and effect, pertains to a consumption of capital assets rather than to a business loss. We also observe that, by virtue of the effect of the minimum royalty provisions in the Mohawk lease, it was, on March 1, 1913, under an affirmative obligation to remove— or at least to pay for—about two-thirds of the ore then in the ground,[3] and that this affirmative obligation probably covered all the ore mined during the taxing periods now involved. However, no controlling force has been put, in the former cases, upon the presence or absence of this affirmative obligation, and we are inclined to regard its extent as an incident of a particular case which cannot control the general rule.

Holding this view as to the equivalency, for this purpose, between "depreciation," "consumption of capital assets," and "depletion," and as to the effect which must be given to the decision in the Biwabik Case, it follows that the judgment below must be reversed, and judgment entered for the defendant, and the case is remanded for that purpose.

## On Petition for Rehearing.

PER CURIAM. The application for rehearing points out that, in some of the cases cited in the opinion, allowance or credit for materials

[3] The total ore in place was about 1,100,000 tons. The lease had 12 years to run. The minimum royalty of $15,000 per year contemplated removal of not less than 60,000 tons per year, and therefore extended to 720,000 tons out of the total.

exhausted was sought or allowed on the ground that they represented, not income at all, but capital assets consumed, and that the opinion erroneously refers to some of these as if they all involved "depreciation." The correction of whatever inaccuracy there is in the opinion in this respect does not affect our conclusion. In the Biwabik Case, the lessee was not heard to say that his capital assets had been consumed by his mining operations, and we interpret that decision as resting in an essential degree on the idea that the nature of the lessee's title forbade him to make this claim. We cannot read the decisions of the Supreme Court as having determined that the exhaustion of ore reserves is so inherently a business loss, rather than an impairment of capital, that a statutory grant of the right to deduct for depletion on that account will reach a case which has been adjudged not to involve the diminution of capital assets. We think the substantial principles established by the decisions are that both the royalty received by the fee owner and the sums received by the operating lessee above the cost of operation are income; that the statutory reduction for "depletion" cannot be twice credited, once to the fee owner, and once to the lessee; and that the exemption belongs of right to the fee owner.

The application for rehearing must be denied, but the opinion will be refiled, with corrections in the matter indicated.