## LYNCH, EXECUTRIX, ETC. v. ALWORTH-STEPHENS COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 273. Argued January 7, 8, 1925.—Decided March 2, 1925.

1. The interest of a corporate lessee of a mine under a lease for a term of years obliging it to mine a minimum tonnage of ore annually and to pay the lessor, owner of the fee, a stated royalty per ton mined, is property within the meaning of § 12a of the Income Tax Law of September 8, 1916, which provides that the net income of corporations organized in the United States shall be ascertained by deducting from gross income, among other things, " a reasonable allowance for the exhaustion . . . of property arising out of its use," and specifically, in the case of mines, " a reasonable allowance

for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year," etc. United States v. Biwabik Mining Co., 247 U. S. 116; Von Baumbach v. Sargent Land Co., 242 U. S. 503, distinguished. P. 368.

2. As the mining goes on, the property interest of the lessee in the mine, and that of the owner, are lessened, and in both cases the extent of this exhaustion, with the consequent deduction to be made under the above statute, is arrived at by determining the aggregate amount of the depletion of the mine, based upon the market value of the product, and allocating that amount in proportion to the interests of owner and lessee, severally considered. P. 370.

294 Fed. 190, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court (278 Fed. 959) for the present respondent in its action to recover back from an internal revenue collector the amount of an income tax, paid under protest. Upon the death of the defendant, his executrix was substituted.

Mr. Solicitor General Beck and Mr. Merrill E. Otis, Special Assistant to the Attorney General, for petitioner.

Mr. W. D. Bailey and Mr. Horace Andrews, with whom Messrs. J. L. Washburn, Oscar Mitchell and William P. Belden were on the briefs, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The federal income tax return made by respondent (a corporation organized in the United States) for the year 1917 showed the sum of $10,253.21 due the government for income and excess war profits taxes for that year; and this amount was paid. Thereafter, the Commissioner of Internal Revenue assessed respondent with an additional tax of $17,128.44, which respondent was forced to pay and did pay under protest, and to recover which this

action was brought against E. J. Lynch, a collector of
internal revenue, to whom the payment had been made.
Lynch subsequently died and his executrix was substi-
tuted as defendant. The federal district court for the
district of Minnesota, where the action was brought, ren-
dered judgment in favor of respondent for the amount.
278 Fed. 959. The circuit court of appeals affirmed the
judgment, 294 Fed. 190; and the case is here upon cer-
tiorari. 264 U. S. 577.

The facts from which the controversy arose, are not in
dispute, and, for present purposes, may be shortly stated.
Prior to March 1, 1913, respondent had leases upon two
definitely described tracts of land in Minnesota contain-
ing deposits of iron ore, known as the Perkins mine and
the Hudson mine. The leases, unless sooner terminated
by the lessee in the manner therein provided, ran for a
period of fifty years and obliged respondent to mine and
remove at least fifty thousand tons of iron ore annually
from the Perkins and twenty-five thousand tons annually
from the Hudson and to pay the lessor, owner of the fee,
a royalty of thirty cents per ton upon each ton of ore
extracted. Respondent subleased the lands upon terms
not necessary to be stated further than that the sub-
lessee of the Perkins was to pay respondent a royalty of
seventy-five cents per ton and the sublessee of the Hudson
a royalty of sixty cents per ton, or forty-five cents and
thirty cents, respectively, per ton more than was made
payable by respondent to the lessor owner.

Before March 1, 1913, both tracts of land had been fully
explored and the deposits of ore therein developed to such
an extent that the entire amount of tonnage was known
with substantial accuracy, and the properties were demon-
strated to be of great value. On that date it was known
that these ore bodies would be entirely worked out and
the mines exhausted within seven years; and this in fact
happened. The market value of the ore in the mines

during that entire time exceeded seventy-five cents per ton; and it sufficiently appears that during such time respondent and its sublessees were in possession of the lands engaged in mining and removing the ore therefrom. Without repeating the formula followed in arriving at the result, it is enough to say that the trial court found that, under the leases, the respondent had a property interest in these ore bodies, the fair market value of which, as of March 1, 1913, was 71.9 per cent. of the total royalties which would be received under the subleases, and such royalties constituted the sole source of respondent's income. Thereupon, the lower courts held that respondent was entitled to deduct from its gross income for 1917 a sum equal to 71.9 per cent. thereof for depletion, and that only the balance remaining was subject to income and excess profits taxes. Such taxes, properly computed, amounted to the sum returned and originally paid by respondent and no more.

The applicable law is found in §§ 2, 10 and 12 (a) of the Act of September 8, 1916, c. 463, 39 Stat. 756, 757–758, 765, 767. Section 10 imposes a tax of two per centum upon the total annual net income received from all sources by every corporation, etc., organized in the United States. Section 12 (a)[1] provides that such net

---

[1] Sec. 12. (a). In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

.    .    .    .    .    .    .    .

Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade; (a) in the case of oil and gas wells a reasonable allowance for actual reduction in flow and production to be ascertained not by the flush flow, but by the settled production or regular flow; (b) in the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been

income shall be ascertained by deducting from the gross amount of the income, among other things, " a reasonable allowance for the exhaustion  .  .  .  of property arising out of its use  . . .  ; (b) in the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computation are made,  . . ." Section 2 contains the following provision (p. 758): "(c) For the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived."

Upon the foregoing facts and under these statutory provisions, the question presented for consideration is whether the relation of respondent to the mines which were the source of its income, was such that it was entitled to deduct from the gross amount of such income a reasonable amount for exhaustion or depletion. Upon the part of the petitioner the contention is that the leases do not convey to the lessee the ore bodies but are contracts of rental conferring only the right to use and occupy the premises and mine the ore, which, so long as it remains in the ground, is the property of the fee owner. It is, therefore, insisted that by the extraction of the ore, only the property of the fee owner is depleted and such owner alone is entitled to an allowance therefor. On the other

mined and sold during the year for which the return and computation are made, such reasonable allowance to be made in the case of both (a) and (b) under rules and regulations to be prescribed by the Secretary of the Treasury: *Provided*, That when the allowance authorized in (a) and (b) shall equal the capital originally invested, or in case of purchase made prior to March first, nineteen hundred and thirteen, the fair market value as of that date, no further allowance shall be made;  .  .  .

hand, respondent contends that under the leases the
lessee, as well as the lessor, owns a valuable property
interest in the mines and by the terms of the statute each
is entitled to deduct from gross income a reasonable allow-
ance for depletion, the lessee for exhaustion of the lease-
hold interest and the lessor for exhaustion of the fee
interest as lessened by the interest of the lessee, such
deduction to be allowed according to the value of the
interest of each in the property, the entire allowance,
however, not to exceed the total market value in the mine
of the product thereof mined and sold during the taxable
year.

  It is, of course, true that the leases here under review
did not convey title to the unextracted ore deposits,
*United States* v. *Biwabik Mining Co.*, 247 U. S. 116, 123;
but it is equally true that such leases, conferring upon the
lessee the exclusive possession of the deposits and the
valuable right of removing and reducing the ore to owner-
ship, created a very real and substantial interest therein.
See *Hyatt* v. *Vincennes Bank*, 113 U. S. 408, 416; *Ewert*
v. *Robinson*, 289 Fed. 740, 746–750. And there can be
no doubt that such an interest is property. *Hamilton* v.
*Rathbone*, 175 U. S. 414, 421; *Bryant* v. *Kennett*, 113
U. S. 179, 192.

  The general provision in § 12 (a), Second, is that the
deduction from gross income shall include a reasonable
allowance for the "exhaustion . . . of property."
There is nothing to suggest that the word "property" is
used in any restricted sense. In the case of mines, a
specific kind of property, the exhaustion is described as
depletion, and is limited to an amount not exceeding the
market value in the mine of the product mined and sold
during the year. The interest of respondent under its
leases in the mines being property, its right to deduct a
reasonable allowance for exhaustion of such property, if
there be any, during the taxable year results from the

42684°—25——24

plain terms of the statute, such deduction, since the property is an interest in mines, to be limited to the amount of the exhaustion of respondent's interest caused by the depletion of the mines during the taxable year. We agree with the circuit court of appeals, 294 Fed. 194, that, "The plain, clear and reasonable meaning of the statute seems to be that the reasonable allowance for depletion in case of a mine is to be made to every one whose property right and interest therein has been depleted by the extraction and disposition 'of the product thereof which has been mined and sold during the year for which the return and computation are made.' And the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover."

It is said that the depletion allowance applies to the physical exhaustion of the ore deposits, and since the title thereto is in the lessor, he alone is entitled to make the deduction. But the fallacy in the syllogism is plain. The deduction for depletion in the case of mines is a special application of the general rule of the statute allowing a deduction for exhaustion of property. While respondent does not own the ore deposits, its right to mine and remove the ore and reduce it to possession and ownership is property within the meaning of the general provision. Obviously, as the process goes on, this property interest of the lessee in the mines is lessened from year to year, as the owner's property interest in the same mines is likewise lessened. There is an exhaustion of property in the one case as in the other; and the extent of it, with the consequent deduction to be made, in each case is to be arrived at in the same way, namely, by determining the aggregate amount of the depletion of the mines in which the several interests inhere, based upon the market

value of the product, and allocating that amount in proportion to the interest of each severally considered.

We are referred to *Weiss* v. *Mohawk Mining Co.*, 264 Fed. 502, where the circuit court of appeals for the sixth circuit reached an exactly opposite conclusion to that announced in the present case by the courts below. The opinion in that case was apparently made to rest upon the decision of this court in *United States* v. *Biwabik Mining Co., supra,* which, in turn, followed *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503. These cases, however, arose under the corporation tax law of 1909, c. 6, 36 Stat. 11, 112, § 38, imposing a special excise tax with respect to the carrying on or doing business by a corporation, etc., measured by its net income, in the ascertainment of which, among other things, there was authorized a deduction of " a reasonable allowance for depreciation of property." The *Sargent Land Co.* case concerned the owner and lessor of mining property, while the *Biwabik Mining Co.* case concerned a lessee of mining property. It was held in both cases, as we hold here, that the leases under consideration did not convey title to the ore in place. Whether the lessees had property interests such as we have determined here, was not considered. Both decisions, expressly in one and implicitly in the other, turned, primarily, upon the scope of the word " depreciation." In the *Sargent Land Co.* case this appears expressly from the following extract (pp. 524–525): " We do not think Congress intended to cover the necessary depreciation of a mine by exhaustion of the ores in determining the income to be assessed under the statute by including such exhaustion within the allowance made for depreciation. It would be a strained use of the term depreciation to say that, where ore is taken from a mine in the operation of the property, depreciation, as generally understood in business circles, follows. True, the value of the mine is lessened from the partial exhaustion of the property, and;

owing to its peculiar character, cannot be replaced. But
in no accurate sense can such exhaustion of the body of
the ore be deemed depreciation. It is equally true that
there seems to be a hardship in taxing such receipts as
income, without some deduction arising from the fact that
the mining property is being continually reduced by the
removal of the minerals. But such consideration will not
justify this court in attributing to depreciation a sense
which we do not believe Congress intended to give to it
in the Act of 1909." And this view is immediately
emphasized by putting in contrast with the "deprecia-
tion" of the 1909 Act, the "reasonable allowance for the
exhaustion  .  .  .  of property" of the income tax pro-
vision of the Tariff Act of 1913 and the exhaustion and
depletion provisions of the Act of 1916, heretofore quoted.
"These provisions," the court concluded (p. 525), "were
not in the Act of 1909, and, as we have said, we think that
Congress, in that act, used the term 'depreciation' in its
ordinary and usual significance. We therefore reach the
conclusion that no allowance can be made of the character
contended for as an item of depreciation."

The decision in the later case of the *Biwabik Mining
Co.*, it is true, rests upon the predicate that the lessee was
not a purchaser of the ore in place, but that was because
the decision of the lower court—that the lease as applied
to the situation there developed, was "in every substan-
tial way *pro tanto* a purchase"—presented that question
as the one to be met. The lower court thought that the
case of the lessor (Sargent Land Co.) was to be distin-
guished from that of the lessee (Biwabik Mining Co.)
upon the theory that, while the royalties paid to the
former might properly be called income, the receipts of
the latter resulted from the sale of capital assets and were
not income. But this court rejected the assumed distinc-
tion as unsound and decided the case upon that point
without referring to the question of deduction on account

of depreciation. Evidently, it was taken for granted in the lower court that under the decision in the *Sargent Land Co.* case, the latter point was no longer open; and it was passed there, as it was here, without comment. Considering the *Sargent Land Co.* and the *Biwabik Mining Co.* cases together, it is apparent that in respect of the matter of *depreciation* under the Act of 1909, in the opinion of this court, lessor and lessee stood upon the same footing, neither being entitled to an allowance; but it was plainly recognized that if the statutory allowance had been for *exhaustion* or *depletion,* as in the later acts, an entirely different question might have been presented as to both interests. We find nothing in either case out of harmony with the conclusion reached by the lower courts, in respect of the construction and application of the pertinent provisions of law which are now under review.

*Affirmed.*

MR. JUSTICE BUTLER took no part in the consideration or decision of this cause.