## APPEAL OF ESTATE OF LEON C. RIGGS, LACEY L. BOGART, ADMINISTRATOR.

Docket No. 1932.  Submitted July 6, 1925.  Decided September 28, 1925.

Upon the evidence, *held* that the taxpayer was entitled to a deduction, in an amount stated, for exhaustion of the value of a leasehold, and was not entitled to an allowance for exhaustion of the value of restaurant equipment.

*Joseph Getz, Esq.*, for the taxpayer.
*James T. Dortch, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the year 1918 in the amount of $3,140.83. The taxpayer

claims error in the determination of the deficiency (1) for the failure or refusal of the Commissioner to allow a deduction on account of the exhaustion of a certain leasehold, and (2) on account of the refusal to allow depreciation on furniture, fixtures, and equipment in the decedent's restaurant.

### FINDINGS OF FACT.

The taxpayer, an individual residing in the City of New York, was continuously engaged in the operation of a restaurant at 43 West Thirty-third Street, New York City, from the 12th day of September, 1910, to and including the taxable year here in question.

On the above-mentioned 12th day of September, 1910, the taxpayer secured a lease upon the premises in which the restaurant was conducted at a rental of $24,000 per annum for a portion of the period of the lease and of $29,000 per annum for the remainder.

Upon taking possession of the property the taxpayer expended a substantial sum in interior improvements to make the property more serviceable for his purposes, and in addition expended a substantial sum for restaurant equipment. The lease acquired by the taxpayer ran until December 31, 1926.

Subsequent to the acquisition of the lease in question, and prior to March 1, 1913, the following improvements in the vicinity of the premises in question affected materially the amount of business naturally flowing to a well-conducted restaurant in that locality:

1. The uptown terminal of the Hudson tubes, connecting railroad terminals and other points in New Jersey with New York by rapid transit facilities, was completed.

2. The Seventh Avenue subway, connecting lower and upper New York with a station at the Pennsylvania terminal, Thirty-third Street and Seventh Avenue, was projected and under construction.

3. The McAlpin Hotel on Broadway, between Thirty-third and Thirty-fourth Streets, was completed and opened.

4. The Gimbel Bros. and Saks department stores on Thirty-third Street and Sixth Avenue were completed and opened.

The number of patrons served in the restaurant increased from 877,097 in 1911 to 1,182,235 in 1913, and the gross income from $259,420.49 to $452,372.73.

Expert testimony as to the fair market value of the leasehold and improvements thereon as of March 1, 1913, establishes that value at $178,500.

The value of restaurant equipment appraised as of March 1, 1913, establishes the fair market value of that equipment as of that date at $33,859.87.

The taxpayer at all times since the acquisition of its lease, and since March 1, 1913, kept the premises in repair and replaced the restaurant equipment from time to time as necessary, and has charged all such expenditures to the annual expense of the year in which made. The Commissioner in the audit of the taxpayer's return for the year in question, allowed a deduction for exhaustion of the leasehold at the rate of 10 per cent on $50,000 or $5,000. No deduction was allowed by the Commissioner for exhaustion, wear and tear of the furniture, fixtures and equipment, upon the ground that such wear and tear was entirely compensated by the annual expenditure for replacement and repair of equipment.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

### OPINION.

JAMES: The taxpayer claims an allowance for exhaustion of its leasehold and the improvements thereon of a capital sum of $178,500 over a period of $13\frac{10}{12}$ years, from March 1, 1913, to the expiration of the lease, or an annual deduction of $12,903.61 as against $5,000 allowed by the Commissioner.

We have decided that a leasehold is property subject to exhaustion. *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169; *Appeal of Hotel De France Co.*, 1 B. T. A. 28; *Appeal of Royal Collieries Co.*, 1 B. T. A. 369. That a leasehold is property subject to exhaustion has been held in *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364.

The remaining question, then, is whether the taxpayer's computation of the exhaustion is correct, that is, whether the actual value and the term are as alleged, and on this we have found it to be a fact that the value of the leasehold and improvements on March 1, 1913, was $178,500, the amount claimed by the taxpayer, and the period is $13\frac{10}{12}$ years, that is, the period from March 1, 1913, to December 31, 1926. The deduction for exhaustion of the leasehold should, therefore, be increased by the amount of $7,903.61 as claimed by the taxpayer.

The taxpayer also claims the right to exhaust the value which it had expended in furniture and fixtures as of March 1, 1913, in the amount of $33,859.87, less a salvage value of 15 per cent thereof, or $5,078.97, the balance of $28,780.90 likewise to be exhausted over $13\frac{10}{12}$ years, or in the amount of $2,080.54 annually.

The Commissioner has refused to allow any deduction on account of this exhaustion, for the reason that the taxpayer admits having

charged all replacements and repairs to expense and that the result of an allowance for exhaustion would, therefore, be a duplication of deduction.

In our opinion neither the position of the taxpayer nor that of the Commissioner is correct. The taxpayer, in effect, contends for the exhaustion of its initial value of furniture and fixtures over the term of the lease, although the life of a large portion of this equipment is less than the term of the lease, and the right in addition to charge off, year by year, all replacements, renewals, and repairs to the expense of the year. By this process the taxpayer would find himself, at the termination of the lease, in possession of the full equipment of a restaurant in virtually new condition, which he would be able to dispose of at a much greater sum than the estimated 15 per cent residual value. The Commissioner, on the other hand, denies the taxpayer all deductions on account of exhaustion of the March 1, 1913, value of the equipment, upon the sole ground that the equipment is kept virtually in a new condition by means of rapid renewals, replacements, and repairs. This argument is manifestly unsound, since all property which is used at all is kept in good condition by the same process, and this argument would result necessarily in the disallowance of all deductions on account of exhaustion, contrary to the specific language of the statute. The correct method of accounting and of claiming the deductions in question should have been for the taxpayer, year by year, to have estimated his exhaustion allowance upon the various kinds of property separately and on the life of that property or the life of the lease, whichever was shorter, and to have set up a corresponding depreciation reserve. To that reserve should have been charged all renewals and replacements, while repairs should have been charged entirely to expense. Additions to the equipment under a correct method would have been capitalized. Replacement costs per unit in excess of the cost on March 1, 1913, would, as they occurred, have been capitalized. Since the taxpayer was constantly approaching the termination of the lease, the exhaustion period as to replacements would also be constantly shortening, so that to a greater and greater extent the exhaustion of property acquired would be based upon the life of the lease instead of the life of the property. Neither the taxpayer nor the Commissioner, however, has suggested such a method, and we are not able to determine from the evidence submitted by the taxpayer the extent to which he has recovered by deduction the original value of furniture and fixtures as of March 1, 1913. It is in evidence, however, as to the item of linen, that at some time prior to the taxable year in question the taxpayer ceased to employ linens owned by him and adopted a plan

of rental, so that, at least as to these items, a complete loss was ascertained at some time between March 1, 1913, and the beginning of the taxable year here in question.   Evidence was also introduced as to the breakage of crockery, one specified item of bread plates being mentioned upon which the replacement was alleged to have been 50 dozen per month.   No doubt substantially all of the original value on March 1, 1913, was replaced and charged to expense long prior to the beginning of the taxable year.   Even chairs and tables in restaurants are subject to severe usage, although we are without specific evidence as to the life of this class of equipment in the restaurant here in question.   Upon the entire record, however, we are of the opinion that the taxpayer has failed to prove himself entitled to the deduction for exhaustion of equipment in the amount claimed, of $2,080.54, and the action of the Commissioner in respect of this item is confirmed.

ARUNDELL not participating.