**HABERLE CRYSTAL SPRINGS BREWING CO. v. CLARKE, Collector of Internal Revenue.**

Circuit Court of Appeals, Second Circuit.
January 14, 1929.

No. 89.

Welch & Welch, of Syracuse, N. Y. (Arthur A. Ballantine and George E. Cleary, both of New York City, of counsel), for plaintiff in error.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, of counsel), for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The plaintiff is a New York corporation, which during its fiscal year ending May 31, 1919, and for many years prior thereto, was profitably engaged in the manufacture and sale of lager beer and ale. Its taxes for 1919 were computed without allowing any deduction for obsolescence of its good will, due to the imminence of national prohibition legislation. Such taxes were paid under protest, a claim for refund was filed and rejected, and this action was then brought to recover the sum of $16,618.08 and interest thereon from date of payment, July 6, 1922.

The referee found as a fact, and it is apparently conceded by defendant, that on and after January 31, 1918, it was reasonably apparent that prohibition legislation would be adopted, although the Eighteenth Amendment did not become effective until January 16, 1920. It was found that the value of plaintiff's good will on March 1, 1913, was $174,482.64, and that the value of its good will was wholly destroyed by prohibition legislation. A deduction of $89,071.55 for the fiscal year 1919 was agreed by the parties to be the correct amount to deduct, if any deduction for obsolescence of good will were

allowable. The referee's finding on this subject is as follows:

"The parties hereto have agreed that if any deduction from plaintiff's income for the fiscal year 1919 for obsolescence of good will is allowable under the statute, such deduction shall be $^{365}\!/_{715}$ of the value of such good will on March 1, 1913. The numerator of the fraction is the number of days in the fiscal year 1919; the denominator of the fraction is the number of days from January 31, 1918, to January 16, 1920. The Commissioner of Internal Revenue has decided that by January 31, 1918, it became reasonably apparent that National prohibition would be adopted. The Prohibition Amendment to the Constitution became effective on January 16, 1920. The deduction for obsolescence of good will in the fiscal year 1919 on this basis is $89,071.55."

The deduction is claimed by virtue of section 234(a) (7) of the Revenue Act of 1918 (40 Stat. 1077):

"Sec. 234(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * * "

The sole question presented to us is whether this provision of the statute permits a taxpayer to deduct from his gross yearly income any allowance for the obsolescence of the good will of his business during such year, because the good will has become of limited duration by the imminence of legislation which will prohibit the business.

The plaintiff contends that the word "property" in the section above quoted is used in an unrestricted sense, as stated in Lynch v. Alworth-Stephens Co., 267 U. S. 364, 369, 45 S. Ct. 274 (69 L. Ed. 660), so that when, in fact, plaintiff's good will became of limited duration, it was as much the subject of an exhaustion or obsolescence deduction as any other kind of property. The lower court, however, held that "good will * * * is not the kind of property meant by section 234(a) (7)." (D. C.) 20 F.(2d) 540. In reaching this conclusion the court relied largely upon the authority of two cases in the Eighth and Ninth Circuits. Red Wing Malting Co. v. Willcuts, 15 F.(2d) 626 (C. C. A. 8) 49 A. L. R. 459; Landsberger v. McLaughlin, 26 F.(2d) 77 (C. C. A. 9). We shall first approach the problem without reference to authority, and will then take up the cases which have passed upon it.

Light upon the meaning of the section may be gained by considering the corresponding provision of the Revenue Act of 1916. Under section 12(a) of this act (39 Stat. 768) the deduction permitted was "a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade." The Revenue Act of 1918 struck out the phrase "arising out of its use or employment in the business or trade," and substituted therefor "used in the trade or business, including a reasonable allowance for obsolescence." Thus, while under the earlier act deduction was allowed only when the exhaustion or wear and tear of the property resulted from its use in the business, under the later statute exhaustion, wear and tear is defined to include obsolescence, and such exhaustion or obsolescence may result from any cause, provided only that it occurs with respect to property used in the business.

The purpose of this change of language would seem to be to permit an allowance for the loss in value of a business asset due to causes unconnected with its physical exhaustion by use, such as new inventions superseding it in the art, or new legislation prohibiting its use in the business. The shortening of the useful economic or commercial life of an asset before the end of its physical life is best described by the term "obsolescence." A brewery may fairly be regarded as obsolete after prohibition, and as subject to obsolescence during the period between the date when such legislation became certain and the date when it went into effect. The taxing authorities do not deny that legislation which shortens the useful life of tangible assets entitles the taxpayer to an allowance for obsolescence under the 1918 act. Appeal of Manhattan Brewing Co., 6 B. T. A. 952, which allowed obsolescence of tangibles, but not of good will, because of the imminence of prohibition.

Concededly good will is property—intangible, it is true, but that of itself does not exclude it from the section. Many forms of intangible property are admittedy subject to exhaustion or obsolescence, within the meaning of the Revenue Act of 1918. This was clearly recognized by the Commissioner in the regulations which were promulgated under the authority of section 1309 (40 Stat. 1143; 26 USCA § 1254). Article 163 of Regulations 45 (1920 Edition) provides:

"*Depreciation of Intangible Property.*— Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance.

Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner."

Article 167 of Regulations 45 relates specifically to depreciation allowances in the case of patents and copyrights. That rights under patents, leases, and contracts of limited duration may be exhausted by the passage of time, and that the taxpayer is entitled to deduct a reasonable allowance for such exhaustion, seems to be well settled. As to patents, see Van Kannel Revolving Door Co. v. Commissioner, 11 B. T. A. 1209; Perfect Window Regulator Co. v. United States, 66 Ct. Cl. ——, June 18, 1928. As to leases, see Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660; Philip Henrici Co. v. Reinecke, 3 F.(2d) 34 (D. C. N. D. 111); Kaufman-Straus Co. v. Lucas, 12 F.(2d) 774 (C. C. A. 6); Appeal of Grosvenor Atterbury, 1 B. T. A. 169; Appeal of Secor Hotel Co., 7 B. T. A. 158; Hawaiian Sugar Co. v. Commissioner, 13 B. T. A. 683. As to contracts, see International Curtis Marine Turbine Co. v. United States, 63 Ct. Cl. 597; Kentucky Tobacco Products Co. v. Lucas, 5 F.(2d) 723 (D. C. W. D. Ky.); Lassen Lumber & Box Co. v. Blair, 27 F.(2d) 17 (C. C. A. 9); Appeal of Atlantic Carton Corp., 2 B. T. A. 380. Consequently, if good will is to be distinguished from other intangibles in this respect, some reason must be found for the distinction.

The referee has found that on January 31, 1918, it was reasonably certain that prohibition legislation would be adopted in the near future, and that after the Prohibition Amendment became effective, on January 16, 1920, the plaintiff's good will came to an end. Consequently, on January 31, 1918, it became known that the plaintiff's good will would terminate in 715 days. If any one had purchased plaintiff's brewery and good will on that date, paying, for illustration, $50,000 for the good will, why should not that capital investment of $50,000 be depreciated during the limited period of the life of the asset purchased, just as would be done in the case of the purchase price of a patent or a lease having still 715 days to run? In each case the owner has full and continuous enjoyment while his right endures. It is a convention to say that the asset is used up day by day, a convention adopted to spread the loss equitably. The patentee's rights, or the lessee's, are as complete in the last year as before; only they will come to an end, like this good will. To us the cases seem precisely alike in this regard, and that every consideration which justifies spreading the loss in one case justifies spreading it in the other.

It is argued that the statute should be confined to assets of a nature such that when originally acquired they will waste. The good will which plaintiff owned on March 1, 1913, was apparently of unlimited duration. Only by subsequent events did it become known that its life was limited. The date when an asset originally imperishable becomes perishable, and the length of life then to be ascribed to it, may well be difficult of proof; but in the instant case these facts were settled by agreement. Granted that on a given date plaintiff's good will did become limited to a life of approximately 2 years, what is there in the language of section 234 to exclude its application to such property? We see nothing.

As already pointed out, obsolescence is often of that very type. A machine may have an apparent life of 20 years when it is purchased, and for 10 years nothing may appear in the art which successfully competes with it; then a new invention may enter the field, which renders the machine obsolete in 2 years. It can scarcely be doubted that, while during the first 10 years depreciation would have been allowed at the rate of 5 per cent. per year, the remaining 50 per cent. of its cost would be permitted to be written off during the last 2 years of its useful economic life. In principle, we see no difference between the hypothetical case, just stated, and the application of the section to an asset which was originally thought to be of indefinite duration, but by change of legislation becomes of limited life.

It is further urged that good will differs from other property subject to depreciation allowance, because good will has no existence except in connection with a going business and cannot be transferred apart from it. Of course, that is true; but its materiality to the present issue is not apparent. A going business has a value over and above the aggregate value of the tangible property employed in it. Such excess of value is nothing more than the recognition that, used

222

in an established business that has won the favor of its customers, the tangibles may be expected to earn in the future as they have in the past. The owner's privilege of so using them, and his privilege of continuing to deal with customers attracted by the established business, are property of value. This latter privilege is known as good will. It can, it is true, be exercised only in, connection with the exercise of the former; hence it cannot be separately assigned, and legislation which cuts short the use of tangibles in the business necessarily limits also the good will. Every consideration which justifies allowance for the "obsolescence" of the tangibles, because of compulsory future discontinuance of the business, ought to create a similar allowance for the good will.

Thus, as a matter of construction, unaffected by authority, we think the statute permits allowance for the obsolescence of plaintiff's good will. We should entertain some doubt whether the value of the good will on March 1, 1913, rather than its 1918 value, when it first became of limited duration, were the proper measure of the value to be written off during the period of obsolescence; but the concession, as found by the referee, has eliminated that question.

█ We will now consider the problem in the light of the decisions. As pointed out in the Red Wing Case, supra, the taxing authorities have decided the question both ways. In T. B. R. 44, 1 C. B. 133 (1919), the Advisory Tax Board ruled that distillers were entitled under the Revenue Act of 1918 to an allowance for obsolescence of good will, trademarks, and trade-names, because of the destruction of the value of such assets by prohibition legislation. In O. D. 298, 1 C. B. 138 (1919), a similar ruling was applied to brewers. A formula for the computation of good will values was set forth in Appeals and Review Memorandum 34. See 2 C. B. 31 (1920). Subsequently, however, the Bureau overruled its original interpretation of the statute, and ceased to allow deductions for obsolescence of a brewer's good will.

The first court decision is the Red Wing Case, in the Eighth Circuit. Circuit Judge Kenyon gave the problem very careful and exhaustive consideration. He concluded that section 234(a)(7) "limits the allowance for obsolescence to such property as is susceptible to exhaustion, wear, and tear by use in the business, and good will is not such property." Page 633 of his opinion as reported in 15 F.(2d). Following this decision, a majority of the Board of Tax Appeals, over a forceful and able dissent, decided Appeal of

Manhattan Brewing Co., 6 B. T. A. 952, already referred to. To this ruling the board has adhered in numerous subsequent cases. The only other court decision is Landsberger v. McLaughlin, supra, in which the Ninth Circuit merely followed the Red Wing Case.

Much as we respect the considered decisions of other circuits, we conceive that our duty requires us to form an independent judgment in cases of first impression in our own court, and forbids us blindly to follow other circuits, when our minds are not persuaded by the arguments advanced. Particularly in cases of a character such as this, diversity of view between the circuits is not a serious objection, for the Supreme Court will then exercise its appropriate function of taking up the question and determining the proper interpretation of an important section of the Tax Law. It is true that the Supreme Court refused certiorari in the Red Wing Case, 273 U. S. 763, 47 S. Ct. 476, 71 L. Ed. 879, but they have often warned that no inference is to be drawn from such a refusal. Consequently, we feel at liberty to decide the question independently.

For the reasons stated, the judgment below was erroneous. It is accordingly reversed, and the cause remanded, with directions to enter judgment for the plaintiff upon the referee's report.