MONT S. ECHOLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. J. ECHOLS, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. J. ECHOLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FANNIE ECHOLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELIZABETH E. CRAVENS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45231-45235. Promulgated December 9, 1931.

*Fadjo Cravens, Esq.*, for the petitioners.

*Maxwell Mahany, Esq.*, and *E. L. Updike, Esq.*, for the respondent.

OPINION.

ARUNDELL: Each of these five petitioners sustained in 1927 losses by reason of stock of the Pine Mountain Coal Company which they had owned for more than 2 years becoming worthless, due to the bankruptcy of that company, all of its assets being distributed to its creditors. In that same year each petitioner realized, on sales of stockholdings in other corporations, capital gains in excess of the loss sustained on Pine Mountain Coal Company stock. Each petitioner for that year exercised the option provided by section 208(b) of the Revenue Act of 1926 to return "capital net gain" for tax at the statutory rate of 12½ per cent, and computed such net gain by deducting from the capital gains realized the losses sustained on Pine Mountain Coal Company stock. Respondent has adjusted net income by treating the latter loss as an "ordinary deduction."

Petitioners contend that these several losses on Pine Mountain Coal Company stock are capital losses within the purview of section 208(a) (2) of the Revenue Act of 1926. It is their insistence that these losses resulted from the liquidation of that corporation and that consequently they stand in the same position, with the same character of loss and possessed of the same rights as a stockholder of a liquidated corporation who has been in receipt of a liquidating dividend equal to a portion of the cost of his stock. They contend that the only difference is in the extent of the loss, not in its character, and that it falls within the purview of section 201 (c) of the Revenue Act of 1926, providing that "Amounts distributed in complete liquida-

tion of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock."

It is petitioners' contention that, in view of the above quoted section, the losses in question must, for all purposes of the taxing statute, be deemed to have resulted from an " exchange " of the stock and consequently to be capital losses as coming within the definition of section 208 (a) (2) of the Revenue Act of 1926, of " deductible losses resulting from the sale or exchange of capital assets."

Respondent admits that if these losses come within the purview of section 201 (c) they must be held to have been sustained upon an " exchange " of the stock and consequently to be " capital losses," but insists that such section deals exclusively with a situation in which the stock has been surrendered and a distribution of assets received in exchange.

Losses resulting from shares of stock becoming worthless have uniformly been treated by respondent as deductible only as ordinary losses under section 214 and not as capital losses under section 208. Art. 144, Regulations 65; IT 2149, C. B. IV, p. 36. With this interpretation placed upon section 201 (c) of the 1924 Act by respondent, Congress reenacted such section in the 1926 and 1928 Acts without change affecting the question here presented. We must consider this as an indication that the construction placed upon this section correctly interpreted the legislative intent. *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110; *Brewster* v. *Gage*, 280 U. S. 327.

An examination of section 201 (c) reveals nothing ambiguous. Its terms are clear and direct and we can not find in the language used an indication of meaning extending its application to liquidation where no distribution is made to stockholders. We can discern no purpose in its enactment other than to subject liquidating gains to normal tax as well as surtax. On the other hand, we can not find in the capital gain and loss provisions of the Act, nor in the legislative history of their enactment, an intent to include, in capital losses, losses sustained by capital assets merely becoming worthless. The intention there is clearly to allow as capital losses only those accruing from " sale or exchange " of capital assets, losses due to such assets becoming worthless being covered by the ordinary loss provisions allowing their deductions from income other than that represented by capital gain.

Even were section 201 (c) considered of doubtful meaning, the rule of *Gould* v. *Gould*, 245 U. S. 151, that in such case the interpretation most favorable to the taxpayer must be accepted, would not help us. While in the instant case the construction we have given

works to the injury of the taxpayer, on slightly different facts it would work to his benefit.

The conditions pointed to by these petitioners as evidencing an intent by Congress in the enactment of section 201 (c) to include in the same class a loss in liquidation where no distribution to stockholders was made and one realized by surrender of the stock in return for a distribution thereon, appears to us, upon analysis, to tend merely to support an argument that conditions in the two cases are substantially similar from an economic standpoint and should therefore be similarly treated. However, that is a question for Congress in its enactment of legislation. We may only construe and apply the statute as enacted, without extension beyond the legislative intent. *United States* v. *Merriam*, 203 U. S. 179; *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364.

Reviewed by the Board.

*Judgment will be entered for the respondent.*