### PALMER v. BENDER, Collector of Internal Revenue.

### BENDER et al. v. PALMER.

### No. 6409.

Circuit Court of Appeals, Fifth Circuit.
March 26, 1932.

Rehearing Denied April 23, 1932.

Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and Philip H. Mecom, of Shreveport, La., for Bender and others.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal and a cross-appeal from a judgment of the District Court in part denying and in part allowing recovery of amounts assessed by the Commissioner of Internal Revenue as deficiencies and paid by appellant under protest upon net income which he received from two oil and gas leases in the years 1921 and 1922, as a member of each of two partnerships, known as the Smitherman and Baird partnerships.

The questions presented have heretofore been considered upon an identical state of facts and decided by this court, upon petitions of other members of the Smitherman and Baird partnerships to review decisions of the Board of Tax Appeals, in the cases of Waller v. Commissioner (C. C. A.) 40 F.(2d) 892, and Herold v. Commissioner (C. C. A.) 42 F.(2d) 942. The judgment of the District Court in this case, following our decisions in those cases, rejected appellant's claims that he was entitled, under section 214 (a) (10) of the Revenue Act of 1921, 42 Stat. 241, to deductions from his net income during the years involved for depletion based on the fair market value of either of the two leases at the date of the discovery of oil, and held that he was liable for all the deficiencies assessed against him by the Commissioner of Internal Revenue, except for a deficiency assessment based upon the sum of $350,000, which was paid in 1921 by the Gulf Refining Company in compliance with a condition of a judgment annulling Baird's contract with Flannery.

The above-cited section of the 1921 Revenue Act provides that in computing net incomes derived from oil and gas wells a reasonable allowance shall be made for depletion where the fair market value of the property is materially disproportionate to the cost, the depletion allowed to be based upon such value at the date of discovery or within 30 days thereafter, and to be equitably apportioned between the lessor and the lessee. Section 218 (a) of the same revenue act makes each member of a partnership liable for income taxes upon his distributive share. Congress, which was at liberty to

John H. Tucker, Jr., and James E. Smitherman, both of Shreveport, La., Henry P. Dart, and Henry P. Dart, Jr., both of New Orleans, La., and Fred R. Angevine, of New York City, for E. G. Palmer.

withhold the allowance altogether or grant it upon such terms as it chose to impose, has allowed for depletion of oil and gas wells what was really a loss or conversion of capital, just as it has made an allowance for exhaustion of property used in trade or business. § 214 (a) (8), 42 Stat. 240. In Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660, the Supreme Court held that an allowance for exhaustion of ore deposits inured to the benefit of every one whose property right and interest in the mine had been depleted. And the same principle was applied to oil and gas wells by this court in Pugh v. Commissioner (C. C. A.) 49 F.(2d) 76.

■ Upon a sale of his oil and gas lease a taxpayer ceases to be entitled to deductions based upon discovery value, for future depletion of such property is not his loss. If therefore, as we have held, the Smitherman and Baird partnerships executed instruments which effected sales or assignments of their oil and gas leases, or of their entire interests therein, they deprived themselves of the right to receive or to continue to receive allowances granted by the revenue act for depletion purposes. Appellant's whole contention is that those instruments amounted in law to subleases. The argument is that in Louisiana royalty is always rent; and from it the conclusion is drawn that these instruments established the relationship of landlord and tenant, and consequently cannot rightly be construed as assignments. The result is that appellant claims that the allowance for depletion should be apportioned seven-eighths to the partnerships and one-eighth to the landowners; and that the other parties to their contracts, although they developed the leases and produced the oil, are not entitled to any depletion allowance since they are only tenants holding under subleases. The Waller Case dealt with the Smitherman partnership, and the Herold Case with the Baird partnership. The detailed facts as stated in the opinions in those cases need not be repeated here. The original lessors granted the right of assignment of the leases, in whole or in part. Smitherman's contract with the Ohio Oil Company, which was signed by both the contracting parties, declared that Smitherman "did sell, assign, set over, transfer and deliver, without warranty or recourse," unto the Ohio Oil Company an oil and gas lease which he had previously acquired, in consideration of $3,000,000 cash, $1,000,000 to be paid out of half of the first oil produced and saved, "and subject to the further obligation of the said assignee, its successors and assigns to pay over and deliver unto the said assignor, * * * the equal one-eighth of all oil produced and saved from the above described premises as an excess royalty." It was made subject to the payment by the assignee of 1/8 royalty to the original lessor. Baird entered into a contract, also signed by both contracting parties, that he would "sell, assign, convey and deliver" to the Gulf Refining Company "the entirety of said mineral lease," the consideration being in part $325,000, and in part the obligation of that company to continue to operate the lease, and to pay him 1/24 royalty for three years, and thereafter a 1/32 royalty. Baird's contract further declared that he had executed an assignment to the Gulf Refining Company "of his entire interest in the said lease, which said assignment he agrees to deposit in escrow." The document so referred to as an assignment, although admittedly it was delivered, does not appear either in this record or in the record in the Herold Case, but we assume that in form it really was an assignment. Both of these instruments, the one executed by Smitherman and the other by Baird, are, according to the plain meaning of the language employed, complete assignments of the entire interests of the partnerships. There is nothing in either instrument to indicate that it was the intention of the parties to it to create the relationship of landlord and tenant. The operating companies became obligated to account directly to the original lessors for their share of the oil. The consideration in each contract was part money and part so-called royalty. It is not reasonable to suppose that it was the intention of the contracting parties that either the Ohio Oil Company or the Gulf Refining Company should surrender the benefit of the depletion allowance on $4,000,000 in the one case and $325,000 in the other. These cash payments were not advance royalties. It is true that in Work v. Mosier, 261 U. S. 352, 43 S. Ct. 389, 67 L. Ed. 693, similar payments were held to be advance royalties, but the reason is plain. Indian lands were involved in that case, and the law permitted the granting of leases, but did not authorize sales. Advance payments were held to be royalties, because they could not be anything else. The obligation to pay a 1/8 or a 1/32 royalty was the individual covenant of the assignees. The terms of the contracts preclude the idea of forfeiture based upon a failure to pay royalty, and are consistent

only with the right of the purchasers to take all except the royalty oil, of which, with that exception, upon production they became the absolute owners. We do not doubt that royalty reserved by the owner of land is rent, but in our opinion it does not follow that royalty received by a lessee is rent where the lessee receives a substantial additional consideration, and the language of the instrument executed by him clearly indicates a sale and transfer of his lease. In the latter case we think the royalty is just as much a part of the consideration as is the cash payment. In our opinions in the Waller and Herold Cases, we referred to some of the Louisiana decisions and came to the conclusion that in that state as elsewhere royalty may form a part of the consideration paid for the assignment of a mineral lease. Since those opinions were written, the Supreme Court of Louisiana has decided the case of Roberson v. Pioneer Gas Co., 137 So. 46, and, it is argued, has arrived at the opposite conclusion. The questions before that court were whether a particular kind of oil and gas lease was divisible, and whether the drilling of a well upon a part of the land as to which the lease had been assigned inured to the benefit of the lessee holding another part as to which the lease had not been assigned. We are unable to agree that the question as to what constitutes a sublease, as distinguished from an assignment, was before the Supreme Court of Louisiana in that case for decision. But even if appellant occupied the position of a sublessor, there is a broader ground upon which in our opinion the judgment against him should be upheld. The section of the revenue act upon which this action is founded concludes as follows: "In the case of leases, the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee." It cannot well be doubted that the Ohio Oil Company and the Gulf Refining Company were lessees within the meaning of the language just quoted, and were entitled to share in the depletion allowance. Lynch v. Alworth-Stephens Co., supra. They would suffer a greater loss from depletion than would the holders of the overriding royalty. Overriding royalties were not unknown at the time of the passage of this act of Congress. It is almost inconceivable that it was the intention of Congress to withhold an allowance for depletion from the operator of an oil and gas lease who produces all the oil and upon the production of which he owns the greatest portion, and grant it to the holder of an overriding 1/32 royalty. It may be that Congress intended to allow also depletion to the holder of an overriding royalty, but the provision that the allowance should be equitably apportioned forbids the conclusion contended for in this case. Appellant does not sue to recover for depletion based on the proportion which his share of oil bears to total production; and it was admitted in the argument that during the taxable years involved he received allowances measured by his royalty interests. Whether therefore he is entitled to such allowance is a question which is not now before us for consideration. We have no hesitation in saying that in our opinion he is not equitably entitled to allowances for depletion based on the so-called advance royalties, or money payments, or on 7/8 of the oil produced. As in our opinion the Ohio Oil Company and the Gulf Refining Company are to be considered as lessees and beneficiaries within the meaning of the revenue act providing equitable apportionment between the lessor and the lessee, it matters not that under the laws of Louisiana they are to be treated as tenants holding under subleases. Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720. In the Waller Case, it is said that if the Smitherman contract evidenced a sublease, the decision of the Board of Tax Appeals was wrong; but that was the concession of counsel for the Commissioner. 16 B. T. A. 574, 580.

For reasons stated in the Herold Case, we think the cross-appeal is without merit. The members of the Baird partnership paid income tax in 1919 on the $350,000 which were paid in 1921 by the Gulf Refining Company in order to get possession of the lease. That sum was not income in 1921 of the Baird partnership.

Appellee takes nothing by the cross-appeal. On the direct appeal, the judgment is affirmed.