LASSEN LUMBER & BOX CO. v. BLAIR,
Commissioner of Internal Revenue.[*]

Circuit Court of Appeals, Ninth Circuit.
June 25, 1928.

No. 5331.

1. Internal revenue ⬅⬅7(22)—Deduction from corporation's income tax for anticipated depreciation of property cannot be allowed, unless depreciation is reasonably certain (Comp. St. § 6336⅛pp).

Under Act Feb. 24, 1919, § 234 (Comp. St. § 6336⅛pp), providing for a reasonable allowance for obsolescence and wear and tear of property in computing corporation's net income, no deduction can be demanded for anticipated depreciation until there is reasonable certainty that it will take place, and questions of obsolescence depend on particular facts of case, and are ordinarily subject to exercise of sound judgment.

2. Internal revenue ⬅⬅25—Corporate taxpayer, demanding allowance for obsolescence of plant in advance, had burden to establish with reasonable certainty that depreciation would occur (Comp. St. § 6336⅛pp).

Corporation, claiming allowance on net income for anticipated obsolescence of lumber plant 10 years in advance of time when it might actually occur, under Act Feb. 24, 1919, § 234

*Rehearing denied August 20, 1928.

(Comp. St. § 6336⅛pp), had burden to establish with reasonable degree of certainty that the depreciation contemplated would actually occur.

3. **Internal revenue ⬳25—Corporate taxpayer, operating mill under 10-year logging contract with government, held not entitled, under evidence, to deduction for anticipated obsolescence at end of contract period (Comp. St. § 6336⅛pp):**

Corporation, engaged in logging business under 10-year contract with government covering stumpage in national forest, *held* not entitled to allowance for depreciation and obsolescence of mill plant in computing net income under Act Feb. 24, 1919, § 234 (Comp. St. § 6336⅛pp), by virtue of limited operating period of contract and anticipated obsolescence of plant at end of contract period, in view of Treasury Regulations permitting subsequent deductions, where it did not appear certain that the taxpayer would not be able to use the mill at the end of the contract period.

In Error to the United States Board of Tax Appeals.

Proceeding before the United States Board of Tax Appeals for determination of income tax liability by the Lassen Lumber & Box Company, opposed by D. H. Blair, Commissioner of Internal Revenue. From an adverse decision, the taxpayer brings error. Affirmed.

O. K. Cushing, Charles S. Cushing and Walter Slack, all of San Francisco, Cal., for plaintiff in error.

Mabel Walker Willebrandt, Asst. Atty. Gen., C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and Annabel Matthews, Sp. Atty. Bureau of Internal Revenue, all of Washington, D. C. (Sewall Key and Morton P. Fisher, Sp. Asst. Attys. Gen., of counsel), for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a determination by the United States Board of Tax Appeals of the appellant's income tax liability for the years 1919 and 1920, and the single question submitted is of the proper credit to be allowed for plant depreciation, in the nature of obsolescence, for those years. Appellant was and is engaged in logging, converting the logs into lumber, manufacturing boxes, and marketing its products. For that purpose it has a sawmill, together with logging and other equipment near Susanville, Cal. Its principal vested timber resource was acquired through a contract with the government, executed in June, 1918, by which it purchased the right to log 26,000 acres of the adjacent National Forest, the available stumpage upon the tract being at the time estimated at 233,200,000 feet, B. M. Unless an extension of time was later granted, or the amounts were reduced by the forester, appellant was to cut at least 10,000,000 feet prior to July 1, 1919, 76,000,000 feet prior to July 1, 1922, 145,000,000 feet prior to July 1, 1925, 213,000,000 feet prior to July 1, 1928, and the balance, if any, not later than July 1, 1929. Upon the execution of the contract appellant proceeded to construct its mill, using in the main second-hand machinery and equipment, which in part was later replaced with new units. Upon the evidence adduced the Board found the physical life of portions of the plant to be 10 years or less, of other portions, 15 years, and of the remainder 20 years. With these findings both parties are apparently content.

Appellant, however, insists that, regardless of the physical life, the only useful purpose of the plant is to handle the timber resources provided by the contract, that under the contract the operating period is limited to 11 years, that upon the completion of the contract the plant will have only a salvage value, and that subject to the deduction of such salvage value, which is said to be almost negligible, the cost of the plant is to be spread over the 11-year period, with an allowance against gross income of one-eleventh thereof for each income tax year. Even under this theory the plant in part, at least, would seem to have a possible economic life extending beyond the 11-year period provided for the cutting and removal of the logs, for such time as may be required for their manufacture into lumber and boxes and marketing the products. But that consideration is of only minor importance.

[1] The pertinent statutory provision is: "In computing the net income of a corporation, * * * a reasonable allowance for the exhaustion, wear, and tear of property used in the trade or business, including a reasonable allowance for obsolescence" shall be allowed as a deduction. Section 234, Act Feb. 24, 1919, 40 Stat. 1057 (Comp. St. § 6336⅛pp). Just when the peculiar obsolescence, such as is here claimed, actually accrues, and upon what basis it shall be computed and allocated, are questions depending upon the particular facts of the case and are ordinarily subject to the exercise of sound judgment. Owing to competition and changes in general economic conditions, plant obsolescence is attended with many contingencies, the effect of which upon value cannot be safely estimated until they have actually occurred, or are imminent, and in no

case can a deduction be demanded for an anticipated depreciation of that character until there is a reasonable certainty that it will take place. By the evidence adduced at the hearing it was shown that as appellant's logging operations proceeded it became apparent that the original estimate was inadequate, and that in actual cut there would be an overrun of approximately one-third, and while the contract confers no *right* on the appellant to demand an extension of time the possibility of such extension is therein intimated, and the record contains no suggestion of an illiberal policy on the part of the Forest Service in that respect.

With the discovery that the stumpage would so greatly exceed the estimate upon the basis of which the contract was entered into, appellant might therefore have confidently expected a reasonable extension, if desired; and, indeed, if we refer to subsequent events as being confirmatory of this view, we find that about a year after the tax period here in question a new contract was entered into extending the cutting period to December 31, 1937. Besides, as the board upon sufficient evidence found, there was a considerable supply of logs and timber privately owned that was available for the operations of the petitioner, and in the taxable years preceding the hearing it purchased substantial quantities of such raw materials; and there were also substantial supplies of government-owned timber within profitable operating distance. True, by far the larger part of the privately owned timber land was held by a single timber company, and for that reason its availability for appellant's use was perhaps only a possibility.

But there were small holdings, and that they were not negligible is evidenced by the fact that during the period of operation prior to the hearing before the board, appellant had acquired thereof between 25,000,000 and 30,000,000 feet of stumpage, and approximately 35,000,000 feet in the form of logs. It is also true that all the government-owned timber land was embraced in the National Forest, and at one time the Forest Service discouraged the hope that any part of it would be available to appellant. But as early as January 6, 1920, in a letter to appellant the Forester advised it that in compliance with its urgent request a tract of 10,340 acres, with an estimated stumpage of approximately 128,000,000 feet, would be withheld from sale until it would be in a position to bid at the termination of its contract. True, the letter further stated that under the regulations such sale must be made to the highest bona fide bidder and that therefore "we cannot guarantee that you will secure this tract, but we will at least give you a good opportunity to purchase it at the appropriate time." But such a condition is not unusual, for ordinarily purchases of raw materials must be made upon a competitive market.

[2, 3] We do not attempt to analyze the evidence exhaustively, but have thus referred to it only for the purpose of disclosing in a general way the conditions that obtained and in making it clear that the conclusion of the board was not without reasonable basis.

In demanding that allowance for obsolescence be made ten years in advance of the time it may actually accrue, the taxpayer cannot require proof that the requisite contingencies will not happen; but the burden is upon it to establish with a reasonable degree of certainty that they will occur, and the most that can be said of the record here is that what may take place is uncertain. What a conservative business corporation might do in building up a reserve is not necessarily the criterion; such a concern may very well provide for mere contingencies, for in case they do not occur it will have suffered no loss. Appellant is not placed in great peril by the action of the board for under the regulations the plan of computing depreciation may be changed from time to time, so that if, as the operation progresses, it becomes reasonably certain that, as contended, the plant will cease to be economically useful at the end of the period of the existing contract, deductions upon that account may be so spread over the remaining period as to amortize its entire cost. Article 166 of Regulation 62.

We do not think it was error for the board to hold that, before the loss could be so spread, it must appear to "a practical certainty" that the plant would be useless at the end of the period. It is not a mere question of the burden of proof touching existing facts or current conditions; in that respect the evidence is without substantial conflict. Depreciation from day to day and year to year, resulting from wear and tear or other physical deterioration, is susceptible to present estimate. But in a sense the depreciation here claimed does not accrue until the end of the period of use; presently it is constructive only. While upon the assumption that the loss will, in fact, be incurred, it is but fair to spread it ratably over the entire period, it is also only fair to require that it be shown by a preponderance of proof that its occurrence in the future is reasonably or practically certain to take

place. A possibility or mere probability is not enough. It is not a case where we may apply the law of averages, based upon wide experience under similar conditions. Upon the facts of a special case, we are asked to forecast the future for 10 years, and this we ought not to do, where it is possible at a later date to correct a mistake and avoid substantial injustice therefrom by appropriate adjustments, unless the happening of the contingency is reasonably certain to occur. Even in the case of merchandising on credit, where losses from bad accounts are always probable, deductions are not allowed until the worthlessness of the account becomes reasonably certain, and it is charged off.

Affirmed.