TOWNSEND–UEBERRHEIN CLOTHING CO. v. CROOKS, Collector of Internal Revenue.

No. 1055.

District Court, W. D. Missouri, St. Joseph Division.

April 15, 1930.

Albert F. Hillix, of Kansas City, Mo., for plaintiff.

Harry L. Thomas, Asst. U. S. Atty., of Kansas City, Mo., for defendant.

OTIS, District Judge.

This suit is brought to recover additional income and excess profits tax for the fiscal years ending January 31, 1918, January 31, 1919, and January 31, 1920, in the sums of $3,628.92, $8,842.76, and $1,625.10, respectively, although it is not now claimed that the plaintiff is entitled to recover in full the amounts indicated. It is stipulated between the parties that, in the event of a finding by the court for the plaintiff upon any of the issues and a decision by the court that the plaintiff is entitled to any recovery, the exact amount of said recovery shall be computed by the parties.

Undisputed facts (and I have adopted the plaintiff's statement, which is a fair resume) are as follows:

The plaintiff is a Missouri corporation, having its principal office and place of business at Sixth and Felix streets, St. Joseph, Mo., having been since 1906 engaged in the retail clothing business. The defendant is the collector of internal revenue for the Sixth district of Missouri.

Within the time prescribed by law the plaintiff duly filed its income and excess profits tax returns for the fiscal years ending January 31, 1918, January 31, 1919, and January 31, 1920, showing the taxes due

thereof of $3,527.90, $3,067.84, and $14,105.75, respectively, which amounts were duly paid.

Thereafter the Commissioner of Internal Revenue, after an examination of plaintiff's books and records, alleged that plaintiff owed to the United States additional income and excess profits taxes as follows: For the fiscal year ending January 31, 1918, $3,628.92; for the fiscal year ending January 31, 1919, $8,842.76; and for the fiscal year ending January 31, 1920, $1,625.20; and on or about June 27, 1923, duly notified the plaintiff thereof. Thereafter said additional taxes were duly assessed against plaintiff. On or about February 20, 1924, defendant made demand upon plaintiff for payment of aforesaid alleged additional federal income and excess profits taxes, and plaintiff paid to defendant on March 20, 1924, the sum of the respective amounts for the respective years set forth above, said sums being the alleged additional income and excess profits tax liability for the said years. Said payment was made by plaintiff to defendant under protest and for the purpose of avoiding further interest, penalties and forfeitures threatened by defendant in case of nonpayment.

In the calculations of the Commissioner of Internal Revenue on the basis of which the additional tax, in part, for the said fiscal years ending January 31, 1918, and January 31, 1919, was assessed, the plaintiff's invested capital was reduced, from the amount shown on its books and records, in the sum of $6,652.38 for the fiscal year ending January 31, 1918, and $6,197.18 for the fiscal year ending January 31, 1919. This amount, the government claims, represented depreciation of furniture and fixtures experienced and sustained over the period from 1906 to January 31, 1917, in addition to that determined by the plaintiff and approved by the Commissioner in his examination of plaintiff's reports covering that period. This reduction is the difference between the undepreciated balance of furniture and fixtures as of January 31, 1917, of $12,836.03 as shown by plaintiff's books and $6,183.65 as determined by the Commissioner through the application of a theoretical formula by which physical deterioration was determined as being at the rate of exactly $8135/100000$ of the original cost per year.

The plaintiff claimed depreciation on furniture and fixtures over the period from 1906 to January 31, 1917, in the amount of $6,147.16, or approximately 4 per cent. per annum. This depreciation was not, however,

claimed ratably over the period or deducted on any systematic basis, although it was substantial in amount.

Most of plaintiff's furniture and fixtures were purchased in 1908 for use in premises leased for a ten-year period from September 1, 1908, to August 31, 1918. An extension of this lease was subsequently secured (on or about November 1, 1917) for a period of seven months. The furniture and fixtures were removed from these premises on or about March 31, 1919, and practically all discarded.

On the basis of an unrecovered or unextinguished value of $12,836.03 as of January 31, 1917, plaintiff, beginning November 1, 1917, increased depreciation to include a sufficient amount of obsolescence to extinguish the above value over the remaining seventeen months of the known life of said furniture and fixtures, which deduction was in amounts as follows: For the fiscal year 1917, $2,000; for the fiscal year 1918, $8,000; for the fiscal year 1919, $1,836.03, leaving a salvage value of $1,000.

In the calculations of the Commissioner of Internal Revenue on the basis of which the additional tax in part for the fiscal years ending January 31, 1918, January 31, 1919, and January 31, 1920, was assessed, plaintiff's deduction for depreciation and obsolescence was reduced, being allowed in part and reduced as follows:

| Fiscal Year Ending | Allowed | Disallowed and Reduced |
|---|---|---|
| January 31, 1918 | $1,544.80 | $ 455.20 |
| January 31, 1919 | 1,544.80 | 6,455.20 |
| January 31, 1920 | 258.02 | 1,578.01 |

During the fiscal years 1919 and 1920 R. E. Townsend and J. Townsend, stockholders of the plaintiff, advanced $171,256.92 to the plaintiff to pay for a new building, the advances being made in the amounts and on the dates shown by Exhibit 8 of the stipulation. Plaintiff contends that these amounts were investments in the business and constituted additional capital and surplus for invested capital purposes, prorated from the date of receipt, whereas the defendant excludes them from invested capital on the ground that they were borrowed money.

On or about the 5th day of July, 1927, plaintiff duly filed claims for refund of the aforesaid income and excess profits taxes as follows: For the fiscal year ending January 31, 1918, $3,268.92; for the fiscal year ending January 31, 1919, $8,842.76; and for the fiscal year ending January 31, 1920, $1,625.- 20. Said claims for refund and each of them were duly rejected by the Commissioner of Internal Revenue on August 13, 1927.

1. The questions first to be considered are these: Did the Commissioner of Internal Revenue properly increase the plaintiff's invested capital in an amount represented by the difference between the depreciation for the period from 1906 to January 31, 1917, as claimed by the plaintiff, and that set up by the Commissioner through the application of the formula used by him? Did the Commissioner properly disallow extraordinary obsolescence claimed by the plaintiff on store fixtures during the period from January 1, 1918, to March 31, 1919?

The contentions of the plaintiff with reference to these questions are that in 1908 the furniture and fixtures of the plaintiff had a reasonable useful life of twenty-five years and plaintiff would not have been justified in charging off depreciation at a rate in excess of 4 per cent. per annum. The fixtures were new and modern, hence no obsolescence was being experienced or deductible. The plaintiff expected to use them twenty-five years or more, either at that their then location through a renewal of its lease or elsewhere in the unanticipated event that the premises should be leased to some one else without plaintiff having opportunity to renew its lease. There was no time prior to November 1, 1917, at which the plaintiff knew of a definite future date on which these fixtures would be abandoned as obsolete, with sufficient certainty to justify a deduction of obsolescence or an increase in the rate of depreciation. The furniture and fixtures of plaintiff were abandoned and discarded on March 31, 1919, solely because of their unfitness, by reason of the progress of the art in the style and type of fixtures, for use in a new and modern store such as plaintiff was establishing. They were not discarded by reason of complete physical deterioration, but because of the loss of useful value.

These contentions are borne out by the testimony in the case. In such a state of facts the Commissioner was not justified in reducing the plaintiff's invested capital by adding additional depreciation for the period from 1906 to January 31, 1917, nor in disallowing the extraordinary obsolescence claimed by the plaintiff for the period from January 1, 1918, to March 31, 1919. Lassen Lumber & Box Co. v. Blair (9 C. C. A.) 27 F.(2d) 17; Appeal of Columbia Malting Co., 1 B. T. A. 999; Appeal of Manhattan Brewing Co., 6 B. T. A. 952; Corsicana Gas & Electric Co. v. Commissioner, 6 B. T. A. 565.

2. The remaining question in the case is as to whether the advances made by R. E. Townsend and J. Townsend to the plaintiff for the construction of a new store building were properly excluded by the Commissioner from invested capital. The theory of the defendant is that these advances constitute no part of invested capital but that they represent money borrowed by the plaintiff.

This issue must be resolved in favor of the defendant. No other conclusion is warranted by the testimony than that these advances were in the nature of loans to the plaintiff. They were so treated and considered by the plaintiff. They were so treated and considered by R. E. Townsend and J. Townsend by whom the advances were made. Such being the facts, the amounts represented by these advances cannot be considered as invested capital. Section 326(a)(b) of the Revenue Act of 1918 (40 Stat. 1057) provides that invested capital means "actual cash bona fide paid in for stock or shares," and that it does not include "borrowed capital." Appeal of Unterberg & Co., Inc.; 2 B. T. A. 274; Appeal of Warren-Lamb Lumber Co., 1 B. T. A. 786; Appeal of Harrolds Motor Car Co., 5 B. T. A. 429; Appeal of Ft. Wayne Engineering and Manufacturing Co., 2 B. T. A. 1223.

Appropriate findings of fact may be submitted by the parties and also a decree in accordance with this memorandum.