**STATE LINE & SULLIVAN R. CO. v. PHILLIPS, Collector of Internal Revenue.**

**No. 2912.**

District Court, M. D. Pennsylvania.

Jan. 13, 1937.

608

O'Malley, Hill, Harris & Harris, of Scranton, Pa., and Hale & Dorr, and Lawrence E. Green, all of Boston, Mass., for plaintiff.

Frederick V. Follmer, U. S. Atty., of Milton, Pa., Joseph P. Brennan, Asst. U. S. Atty., of Scranton, Pa., Robert H. Jackson, Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to the Atty. Gen., and Arthur P. Curran, Sp. Asst. to the Atty. Gen., for defendant.

WATSON, District Judge.

This is a suit for the recovery of federal income taxes assessed and collected by the defendant from the plaintiff, State Line & Sullivan Railroad Company, for the years 1927, 1928, and 1929. The plaintiff claims deductions from its gross income in the sum of $65,220.17 for each of the above years on account of alleged obsolescence of its railroad property. The Commissioner of Internal Revenue disallowed the claims. The case was tried before the court without a jury.

From the evidence it appears, and the court finds as facts, the following: The plaintiff's net incomes for the years 1927, 1928, and 1929, without deducting any allowance for obsolescence of its property, were $30,662.37, $32,162.34, and $39,541.-68 respectively. The plaintiff duly filed income tax returns for said years showing said net incomes, and paid an income tax of $4,139.43 for the year 1927; an income tax of $3,739.48 for the year 1928, and an income tax of $4,349.58 for the year 1929. In its original tax returns for the years 1927, 1928, and 1929 the plaintiff did not claim any deductions for obsolescence of its railroad properties.

The plaintiff acquired in the year 1874, for $1,000,000, and still owns, approximately 24 miles of single track railroad located in Sullivan and Bradford counties, Pa., about 192 acres of land, and extensive coal mine properties.

On August 14, 1884, the plaintiff leased all its common carrier property, except engines and rolling stock, to the Pennsylvania & New York Canal Railroad Company for a term of 50 years ending April 30, 1934, at a rental of $36,000, for the first 3 years, and $40,000 per year thereafter. The lessee agreed to keep the property in good order and condition and to surrender it at the termination of the lease in the same order and condition as at the date of the lease. The lease was assigned to the Lehigh Valley Railroad Company on December 1, 1888. All the covenants and conditions of the lease were complied with up to the time of its expiration on April 30, 1934, and, on that date, the property was in as good physical condition as in 1884.

On March 13, 1931, the plaintiff filed a claim for refund of 1928 income tax paid in the amount of $3,739.48. On March 16, 1931, the plaintiff filed claims for refund of 1927 income tax paid in the amount of $4,139.43, and for refund of 1929 income tax paid in the amount of $4,349.58. The basis of these claims was that in 1927 obsolescence of the plaintiff's railroad property began, and that the obsolescence would be complete by April 30, 1934.

During the tax years in question, and up to the present time, the railroad prop-

erties which plaintiff now claims are obsolete have been and are now being used for common carrier purposes by the Lehigh Valley Railroad Company. On February 13, 1934, the Lehigh Valley Railroad Company made a bona fide offer to renew its lease for a period of one year at a rental of $20,000, with the understanding that the situation should be re-examined from year to year thereafter, and an annual rental agreed upon. The other terms of the original agreement to remain unchanged. This offer was immediately rejected by the plaintiff, and no counter offer was proposed.

The Lehigh Valley Railroad Company and the plaintiff applied to the Interstate Commerce Commission for permission to abandon the operation of plaintiff's railroad. The only ground for abandonment set forth by the Lehigh Valley Railroad Company was the fact that the plaintiff had refused to renew its lease, and that, after April 30, 1934, it would have no lawful right to operate the railroad. The ground for plaintiff's application was that it had no organization, personnel, equipment, or, funds. Both applications were refused on January 7, 1935, for the reason that present and future public convenience and necessity were not shown to permit the abandonment.

Due to many economic factors, including competition from trucks, falling off in the production of coal, decrease in the population of the territory served, and general economic depression, the tonnage hauled over the plaintiff's railroad steadily decreased from 1927 to 1931. From 1932 until April 30, 1934, the tonnage hauled over plaintiff's railroad increased.

During the taxable years here in question, and on April 30, 1934, the plaintiff's railroad was a commercially useful enterprise. Obsolescence of plaintiff's railroad did not commence in 1927, and was not 100 per cent. effective on April 30, 1934.

### Discussion.

Obsolescence is the process of falling into disuse. It becomes 100 per cent. effective when the property in question becomes useless for the purpose to which it has been devoted. To claim a deduction on account of obsolescence from gross income in computing income tax liability, the taxpayer must show that the property will be abandoned or scrapped at some reasonably definite time in the future prior to the end of its normal useful life. Regulation 69, promulgated under the Revenue Act of 1926, article 116; Regulation 74, promulgated under the Revenue Act of 1928, article 206; Appeal of Columbia Malting Company, 1 B.T.A. 999. Plaintiff alleges that obsolescence became 100 per cent. effective on April 30, 1934, the date when the Lehigh Valley lease expired, and that this obsolescence was reasonably foreseeable in the year 1927. Now, almost 3 years after the expiration of the lease, the case can be examined in the light of what actually occurred.

The question which should be first decided is, whether in 1927, 1928, and 1929 there was a reasonable certainty that the plaintiff's railroad property would become obsolete April 30, 1934. Lassen Lumber & Box Co. v. Blair (C.C.A.) 27 F.(2d) 17.

In the present case, the situation is peculiar, in that the continued use of the property in question was dependent upon the decision of the Interstate Commerce Commission. There is no doubt that the plaintiff desired to abandon its railroad at the expiration of the Lehigh Valley lease. Its right to do so, however, depended on whether the Interstate Commerce Commission would issue a certificate of public convenience and necessity, authorizing the abandonment of the railroad. Such certificate was refused, and the railroad is now being used. The defendant contends that this report of the Interstate Commerce Commission should dispose of the issue of obsolescence raised by the taxpayer. No case presenting this exact situation has been called to the court's attention. In my opinion, if the railroad was commercially useless, more valuable as scrap than as a railroad, the plaintiff's right to claim a deduction on account of obsolescence should not be prejudiced by the Commission's decision. On the other hand, if plaintiff's desire to quit the business and scrap the property was based on a mere whim, and not on the commercial uselessness of the property as a railroad, it should not be allowed a deduction for obsolescence.

During the tax years in question, was there a reasonable certainty that plaintiff's railroad would become commercially useless on April 30, 1934? Richard W. Hale, who testified that he "dominated the control" of the plaintiff corporation, stated that the plaintiff's conclusion that

its property would become obsolete on that date was based "on the balance of probabilities." Coal shipments in the territory served were on the decline, population was decreasing, competition from motor trucks was causing decreases in freight shipments, and the use of automobiles was causing decreases in passenger traffic. These facts do not warrant a conclusion that obsolescence had set in. It was not shown that the decrease in coal shipments was due to exhaustion of the mines in the district, or to any permanent economic factor. It is common knowledge that the anthracite industry as a whole suffered heavily from competition from other fuels during this period. There was no reason to believe that the market could not be regained, for now anthracite occupies a leading place among fuels. There has been an increased coal freight tonnage hauled over the plaintiff's railroad since the year 1932. Population decrease, of course, went hand in hand with the fall in coal production. Truck and automobile competition is not a condition peculiar to the territory served by plaintiff. It is a condition which must be met by railroads throughout the nation. No doubt, these many economic difficulties have seriously impaired the value of plaintiff's railroad, but it cannot be said that they have rendered plaintiff's railroad commercially useless. No deductions for obsolescence can be granted where the property is declining in value but not in usefulness. United Business Corporation of America v. Commissioner of Internal Revenue, 19 B.T.A. 809. The fact that economic changes render a business less profitable, and that such condition is likely to continue, does not create a right to a deduction for obsolescence so long as the property continues in use. Farmers Feed Co. of New York v. Commissioner of Internal Revenue, 17 B.T.A. 507.

Probably the most serious defect in plaintiff's case is the fact that its conclusion that its railroad would become obsolete at the expiration of the Lehigh Valley Railroad Company's lease was arrived at without any attempt to determine whether the lessee would renew the lease. Although the economic factors considered above seriously affected the lessee's revenues, plaintiff's revenues were not affected. Apparently no inquiry was made by plaintiff and no indication was given by the lessee that the lease would not be renewed. The first indication the lessee gave that it no longer considered the lease to be worth $40,000 yearly was in 1934, a depression year, when it offered to renew the lease for one year at a rental of $20,000. This offer was bona fide and without compulsion. It indicated the lessee's belief that the road was of some commercial value. This offer was refused without explanation, and no counter offer was proposed. What was the basis of the refusal? Mr. Hale testified that, in his opinion, it would have been better for the State Line & Sullivan Railroad Company to be allowed to abandon the railroad and take out its scrap value of $127,500 than to accept the offer made to it by the Lehigh Valley Railroad Company to renew the lease. Capitalized at 6 per cent., the proposed rental represents a return on an investment of $333,333. There was no reason to believe that favorable terms could not be reached one year later, and, whether terms could be reached or not, the salvage value was likely to remain approximately the same. The evidence as a whole clearly indicates that the plaintiff's railroad was a commercially useful venture in 1934, and that there was no reasonable certainty in 1927, 1928, and 1929 that it would become commercially useless in 1934. The burden was upon the plaintiff to establish with a reasonable degree of certainty that the depreciation contemplated would actually occur. This the plaintiff has failed to do.

The present case is quite similar to the case of Lassen Lumber & Box Co. v. Blair, supra. In that case, the taxpayer was the owner of a sawmill and logging equipment. It had a contract with the government by which it purchased the right to log a national forest for a period of eleven years. Deduction was claimed on account of obsolescence because, at the end of the contract period, the plant would have only salvage value. It was held that the taxpayer was entitled to no deduction, since there was a reasonable possibility that the contract would be renewed, and it appeared that there was privately owned timber available for the taxpayer's use.

Plaintiff relies upon two cases, both of which are clearly distinguishable. Burnet v. Niagara Falls Brewing Company, 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, involved the question whether a deduction would be allowed on account of obsolescence of property which became useless due to prohibition. In that case, the ob-

solescence of the property was unquestioned. The only question was, whether obsolescence due to prohibition was within the contemplation of the act of Congress. In U. S. v. Wagner Electric Mfg. Co. (C.C.A.) 61 F.(2d) 204, deductions on account of obsolescence of a munitions plant at the end of the World War were involved. The obsolescence was admitted, and the only question was as to how much of the loss for obsolescence should be allocated to the year 1918.

Having determined that the taxpayer's railroad was not obsolescent in the taxable periods here under consideration, it is not necessary to determine the actual cost of the taxpayer's railroad or its fair market value March 1, 1913, but, even if it were, the plaintiff has also failed to meet the burden upon it in this regard, for it has failed to establish by proper and sufficient evidence the cost of its railroad or the fair market value of the railroad as of March 1, 1913.

Now, January 13, 1937, judgment is directed to be entered in favor of the defendant and against the plaintiff.