## DAKOTA–MONTANA OIL CO. v. UNITED STATES.

### No. L–413.

Court of Claims.

July 5, 1932.

LITTLETON and GREEN, Judges, dissenting.

This case having been heard by the Court of Claims, the court, upon the report of a commissioner, and the evidence, makes the following special findings of fact:

1. On January 1, 1926, plaintiff was, and ever since that date has been, and now is, a corporation duly organized and doing business under the laws of the state of North Dakota. All during said time prior to February 4, 1928, plaintiff's principal place of business was located at Kenmare, N. D., and since that time its principal place of business has been located at Shelby, Mont. At all times pertinent hereto plaintiff has been and now is engaged in the business of developing and operating oil properties and producing crude oil, including the owning, development, and operation of oil properties, procuring leases on oil lands, drilling, owning, and operating oil wells, and building, erecting, constructing, and owning the necessary camps and equipment for the construction and operation of said wells.

2. During the calendar year of 1926 plaintiff kept its books and made its income-tax returns on a calendar year and an accrual basis.

3. During the calendar year ending December 31, 1926, plaintiff had a gross income from its oil well operations of $575,160.65 and other income of $3,670.24, making a total gross income of $578,830.89. Twenty-seven and one-half per cent. of $575,160.65, which was plaintiff's gross income from oil-well operations during the calendar year of 1926, computed for depletion in accordance with the provisions of section 204(c) (2) of the Revenue Act of 1926, is the sum of $158,169.18.

4. During the calendar years ending December 31, 1923, December 31, 1924, December 31, 1925, and December 31, 1926, plaintiff expended on its properties known as the Emmons lease, for labor, fuel, hauling, freight, supplies, material, and equipment used in drilling oil wells, casing the same,

erecting derricks and camps, and equipment for the operation of such wells, and for all items of cost in the drilling and completion of producing oil wells ready to connect the same to a pipe line, the sum of $167,779.52, which sum is divided as follows:

to a pipe line, the sum of $33,912.10, which sum is divided as follows:

Equipment and materials..................... $16,915.31
Freight and hauling....................... 2,344.59

Total cost of equipment and materials.... 19,259.90
Total cost of drilling (labor, fuel etc.).. 14,652.20

| Calendar year | Cost of equipment and materials | Cost of freight, hauling, installing equipment, and materials | Total cost of equipment and materials | Total cost of drilling (labor, fuel, etc.) | Total cost of development |
|---|---|---|---|---|---|
| 1923 | $ 1,947.98 | $ 671.00 | $ 2,618.98 | $20,738.28 | $23,357.26 |
| 1924 | 889.61 | 489.75 | 1,379.36 | 13,858.21 | 15,237.57 |
| 1925 | 11,048.17 | 2,181.77 | 13,229.94 | 18,339.98 | 31,569.92 |
| 1926 | 48,690.13 | 6,748.82 | 55,438.95 | 42,175.82 | 97,614.77 |

This made a total expenditure on the Emmons lease for the oil-well equipment and materials of $72,667.23 and in drilling, $95,112.29.

5. During the calendar year ending December 31, 1925, the plaintiff's fractional share of the estimated oil recoverable from the property known as the Emmons lease owned by plaintiff, and upon which the aforesaid expenditures had been made, was 425,000 barrels. Plaintiff's fractional share of the oil which it extracted and produced during the calendar year 1925 from said Emmons lease was 27,226.67 barrels.

6. At the beginning of the calendar year ending December 31, 1926, the plaintiff's share of the total oil reserves estimated to be remaining in the property known as the Emmons lease, owned by plaintiff, and upon which the aforesaid expenditures had been made, was 397,773.33 barrels, and during said year there was added to the plaintiff's share of the estimated oil reserves in the Emmons lease 427,480 barrels not previously known to exist, making an aggregate estimated oil reserve owned by plaintiff in the Emmons lease for the calendar year ending December 31, 1926, of 825,253.33 barrels. During the calendar year ending December 31, 1926, plaintiff's fractional share of the oil extracted and produced by it from the properties known as the Emmons lease was 641,596.59 barrels of oil.

7. During the calendar year ending December 31, 1926, plaintiff expended on its properties known as the Carlson-State lease for labor, fuel, hauling, freight, supplies, material, and equipment used in the drilling of oil wells, casing the same, erecting derricks, camps, and equipment for the operation of such oil wells and for all items of cost in the drilling and completion of producing oil wells ready to connect the same

During the calendar year ending December 31, 1926, plaintiff's fractional share of the estimated total oil reserve in the said Carlson-State lease was 639,360 barrels. Plaintiff's fractional share of the oil extracted and produced by it during the year 1926 from the Carlson-State lease was 535.58 barrels.

8. All expenditures above set forth so made by plaintiff herein prior to and during the calendar year ending December 31, 1925, and during the calendar year ending December 31, 1926, were capitalized by plaintiff and included in its invested capital. The productive life of all producing wells, the expenditures for which were capitalized as above set forth, was more than one year.

9. At the time required by law, plaintiff duly filed with the appropriate collector of internal revenue its income-tax return for the calendar year ending December 31, 1926, which return showed a tax of $42,082.30, which sum plaintiff duly paid to the appropriate collector of internal revenue on the dates as follows:

March 14, 1927, $10,520.58.

June 14, 1927, $10,520.57.

September 12, 1927, $10,520.58.

December 12, 1927, $10,520.57.

The said sums have been duly turned into and deposited by the defendant in the Treasury of the United States.

10. In the tax return for the calendar year ending December 31, 1926, plaintiff claimed a deduction for depletion of $159,200.71, and a deduction for depreciation of $13,210.58, upon certain camp buildings and lease equipment. On May 2, 1928, plaintiff filed with the appropriate collector of internal revenue an amended tax return for the calendar year ending December 31, 1926. Said amended return showed a tax of $21,—

959.21, and claimed a deduction for depletion of $158,169.21, and claimed a deduction for depreciation of $163,301.81, as follows:

Depreciation on well equipment and on intangible drilling costs, $130,469.28.

Depreciation on camp buildings and lease equipment, $26,529.95.

Depreciation on preliminary development, $6,302.58.

Said deduction for depreciation was calculated as shown on a schedule designated as Schedule No. 20 attached by plaintiff to the said amended tax return, a copy of which is in evidence as Exhibit A.

11. On May 2, 1928, plaintiff duly filed with the appropriate collector of internal revenue a claim for refund of the sum of $20,123.07, or such greater amount as is legally refundable, of the income tax paid by it for the calendar year ending December 31, 1926, together with interest thereon. A photostat copy of this claim for refund is in evidence as Exhibit B.

12. Defendant herein by letter to plaintiff dated March 6, 1929, rejected the claim for refund with the exception of an overassessment in the sum of $1,658.86, as hereafter set out. The defendant still retains the sum of $20,123.07 and has not refunded or paid to plaintiff said sum or any part thereof. The defendant on or about April 30, 1929, offered plaintiff herein a check for $1,787.64, being said overassessment of $1,658.86, together with $128.78, interest thereon, which sum plaintiff refused to accept and returned the check.

13. Of the deduction claimed for depreciation in the 1926 amended return, the following amounts are stipulated as allowable:

Depreciation on camp building, etc., as claimed ..................................... $26,529.95
Depreciation on well equipment and material, computed on the unit of production basis:
Emmons lease ................ $50,069.56
Carlson-State lease .......... 14.52
                                        ———— 50,084.08
                                              ————
Total depreciation .................... 76,614.03

Of this sum there was allowed, at time plaintiff paid its said tax, depreciation of $13,210.58 on camp building, etc., leaving an additional depreciation allowable for the calendar year 1926 in the amount of $63,403.45.

14. Assuming that the amounts expended as drilling costs are returnable through depletion, no further deduction on this item is allowable to the plaintiff for the calendar year 1926.

Assuming that the amounts expended as drilling costs are returnable through depreciation, the plaintiff is entitled to a further deduction for the calendar year 1926, calculated upon the proportion of the oil reserve extracted during the calendar year, as follows:

Emmons lease ............................... $71,308.93
Carlson-State lease ......................... 12.28
                                                  ————
                                                  71,321.21

15. During the calendar years 1922, 1923, and 1924 plaintiff had charged as operating expenses certain expenditures made by it in the sum of $18,907.74. These expenditures were early and preliminary costs incident to the leases and preliminary to the drilling, construction, and completion of oil wells. Defendant required plaintiff to set up said expenditures in its tax returns as capital investments, and the defendant has accordingly increased plaintiff's capital investments for the calendar year 1926 in the amount of $18,907.74. A statement of the expenditures is as follows:

Year ending Dec. 31, 1922:
Expenses ...................... $8,798.66
Depreciation on equipment.... 141.36
Depreciation on furniture and fixtures ...................... 19,93
                                                  ———— $ 8,959.95
Year ending Dec. 31, 1923:
Expenses ...................... 6,778.10
Depreciation on equipment.... 631.28
Depreciation on furniture and fixtures ...................... 60.12
                                                  ———— 7,469.50
Year ending Dec. 31, 1924:
Expenses ...................... 1,890.60
Royalties ...................... 1,669.30
Interest and taxes.............. 717.11
Depreciation on equipment.... 1,171.91
Depreciation on furniture and fixtures ...................... 80.37
                                                  ————
Total .......................... 5,529.29
Less: Receipts ................ 3,051.00
                                                  ———— 2,478.29
                                                        ————
Total .................................... 18,907.74

Assuming that the said amount of $18,907.74 is returnable through depletion, no further deduction on this item is allowable to the plaintiff for the calendar year 1926.

Assuming that the plaintiff is entitled to a deduction for depreciation upon said expenditures for the calendar year 1926 on the unit of production basis, it should be allowed a deduction of $7,759.63.

16. Plaintiff in its original income-tax return for the calendar year 1926 claimed a deduction for depreciation on camp buildings and lease equipment other than that included in the foregoing findings in the sum of $13,210.58, but in its amended return for said year and its claim for refund plaintiff

claimed a deduction for depreciation on these items in the sum of $26,529.95. The Commissioner of Internal Revenue in acting upon said claim for refund allowed a deduction on account of depreciation upon the equipment in the amount of $26,529.95 and, as hereinabove set out, offered plaintiff a check for the sum of $1,658.86 principal and $128.78 interest as a refund thereon, which check was returned to defendant by plaintiff.

17. If the amounts expended as drilling costs are returnable through depletion and no part thereof through depreciation, then plaintiff is entitled to recover herein from defendant because of the $76,614.03 depreciation on camp buildings, well equipment, and material as set forth in finding 13, the sum of $8,420.21.

If of the drilling costs the sum of $71,321.21 as set forth in finding 14 is returnable through depreciation, then plaintiff is entitled to recover herein from defendant the sum of $18,048.57.

If of the drilling costs the sum of $71,321.21 as set forth in finding 14 is returnable through depreciation and the cost of $18,907.74 set forth in finding 15 is also returnable through depreciation, then plaintiff is entitled to recover herein from defendant the sum of $19,096.12.

Herman J. Galloway, of Washington, D. C. (King & King, of Washington, D. C., and Louis P. Donovan, of Shelby, Mont., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Ralph C. Williamson and T. H. Lewis, Jr., both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff corporation during the years 1923, 1924, 1925, and 1926, was engaged in the business of developing and operating oil properties and the production of crude oil, including the owning, development, and operating oil properties, procuring leases on oil lands, drilling, owning, and operating oil wells, and building, erecting, constructing, and owning the necessary camps and equipment for the construction and operation of such oil wells.

During the calendar years before stated the plaintiff expended upon the properties involved in suit, for labor, fuel, hauling, freight, supplies, materials, and equipment used in drilling oil wells, casing the same, erecting derricks, and camps, and equipment for the operation of such oil wells, and for all items of cost in the drilling and completion of producing oil wells, a large sum of money.

All these expenditures were capitalized by the plaintiff and included in its invested capital.

In its income-tax return for the calendar year 1926, made upon the accrual basis, in accordance with its bookkeeping methods, the plaintiff claimed a deduction for depletion of its oil reserves in the sum of $159,200.71, and claimed a deduction for depreciation of $13,210.58 upon certain camp buildings and lease equipment, and paid the tax computed upon this basis. Subsequently the plaintiff filed its amended tax return for the year 1926, in which return it claimed a deduction of $26,529.95 upon the camp buildings and lease equipment, upon which it had only claimed a deduction of $13,210.58 in its original return, and in addition thereto claimed a further deduction of $6,302.58 upon the costs of the preliminary development of its wells, and a deduction of $130,469.28 for depreciation upon its well equipment and on its intangible drilling costs. The amended return claimed a deduction for depletion in the sum of $158,169.24.

The plaintiff filed with the amended return a claim for a refund of the sum of $20,123.07, which claim was rejected with the exception of $1,658.86, an overpayment resulting from the commissioner's allowance of the increased depreciation claimed by the plaintiff in its amended return, upon the camp buildings and lease equipment. A check for the amount of this determined overassessment, with interest, was tendered to the plaintiff, which sum the plaintiff refused to accept, returning the check.

It is conceded by the government that the cost of labor, fuel, hauling, freight, supplies, material, and equipment used in casing the oil wells, erecting camps, and equipment for the operation of such wells, are costs upon which depreciation may be had; but it contends that the actual costs of drilling the well, that is, the costs of putting the drill hole in the ground, are covered by the allowance for depletion, and are not allowable deductions for depreciation.

It is urged that the costs of drilling the well were not expended for or related in any way to the installation or erection of any tangible property; that the drill hole is not a part of the physical property constituting

a completed and operating oil well, in the sense that the casings, derricks, camp buildings, and other equipment constitute such physical property; that the cost of drilling the hole is a part of the cost of the oil just as the bonus paid for a lease is a part of the oil cost, the value of the drill hole disappearing entirely when the oil reserves are exhausted. Upon these premises it is contended the costs of drilling the wells should be considered as a part of the cost of the oil itself, recoverable only through depletion.

The applicable provisions of the Revenue Act of 1926, chapter 27, 44 Stat. 9, 16, 41, §§ 204(c) (2), 234(a) (8), 26 USCA §§ 935(c) (2), 986(a) (8), read:

"Sec. 204(c) (2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. * * * "

"Sec. 234(a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. * * * "

The statute expressly provides that in the case of oil wells a deduction shall be allowed both for depletion and for depreciation, the allowance to be made under rules and regulations prescribed by the commissioner and approved by the Secretary. Article 221, of Regulations 69,[1] following the provisions of section 204 (c) (2) of the 1926 Act, provides for the depletion deduction a taxpayer is entitled to make for the taxable year. Article 223 of the same Regulations provides that such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines and development of the property, may at the option of the taxpayer be deducted as a development expense or charged to capital account returnable through depletion. It is provided, however, that if in the exercise of this option a taxpayer charges these incidental expenses to capital account, as the plaintiff did in this case, "in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation."

Article 225 of the Regulations [2] deals with depreciation of improvements in the case of oil and gas wells, and provides that owners and lessees operating oil properties will, in addition to and apart from the deduction allowable for depletion, be permitted to deduct a reasonable allowance for depreciation of physical property, such as machinery, tools, equipment, pipes, etc., so far as not in conflict with the option exercised by the taxpayer under article 223.

The precise question presented was considered by the Board of Tax Appeals in the case of Jergins Trust v. Commissioner, 22 B. T. A. 551. The board said: "Section 234 (a) (9) of the Revenue Act of 1921 and section 234(a) (8) of the Revenue Act of 1924 [26 USCA § 986(a) (8)] permit the deduction in cases such as this of 'a reasonable allowance for depletion and for depreciation of improvements * * *.' As we understand the stipulation, the amounts in controversy were expended in drilling wells and in operations preparatory and relating to such drilling, all of which would constitute a part of the cost of the structure recoverable through depreciation. On the other hand, the concept of the term 'depletion' is the exhaustion of the mineral content of a mine or an oil well. United States v. Ludey, 274 U. S. 295 [47 S. Ct. 608, 71 L. Ed. 1054]. The precise

[1] Treasury Regulations 69, Revenue Act of 1926:
"Art. 221. Depletion in the Case of Oil and Gas Wells.—Under section 204 (c) (2), in the case of oil and gas wells, a taxpayer may deduct for depletion an amount equal to 27½ per cent of the gross income from the property during the taxable year, but such deduction shall not exceed 50 per cent of the net income of the taxpayer (computed without allowance for depletion) from the property. In no case shall the deduction computed under this paragraph be less than it would be if computed upon the basis of the cost of the property or its value at the basic date, as the case may be. In general, 'the property,' as the term is used in section 204 (c) (2) and this article, refers to the separate tracts or leases of the taxpayer."

[2] "Art. 225. Depreciation of Improvements in the Case of Oil and Gas Wells.—Both owners and lessees operating oil and/or gas properties will, in addition to and apart from the deduction allowable for depletion as hereinbefore provided, be permitted to deduct a reasonable allowance for depreciation of physical property, such as machinery, tools, equipment, pipes, etc., so far as not in conflict with the option exercised by the taxpayer under article 223. The amount deductible on this account shall be such an amount based upon its cost or other basis equitably distributed over its useful life as will bring such property to its true salvage value when no longer useful for the purpose for which such property was acquired. Accordingly, where it can be shown to the satisfaction of the commissioner that the reasonable expectation of the economic life of the oil or gas deposit with which the property is connected is shorter than the normal useful life of the physical property, the amount annually deductible for depreciation on such property may be based upon the length of life of the deposit."

wording of the statute indicates clearly that Congress had in mind the distinction between the exhaustion of the natural resources and the recovery of the capital invested in the improvements necessary to work the property. It can not be seriously contended that the exhaustion of petitioner's investment in preparing for and in drilling its wells constitutes any part of the exhaustion of its oil reserves. * * * The stipulation shows that the commissioner has allowed as the cost of improvements (the word used in the statute) only the amounts expended for physical equipment, and has refused to treat as cost of improvements amounts expended for wages, fuel, repairs, and hauling 'in connection with development and drilling.' This terminology excludes the idea that any part of such amount was expended in discovery or exploration work or in operating the leased property. Amounts expended in development and drilling operations convey to us the impression of expenditures for improvement of the property upon which the statute permits the taxpayer to deduct depreciation. The adjustment of taxable income will be accomplished by allowing as depreciation the amounts previously treated as depletion allowances upon these expenditures."

The board followed the same ruling in Ziegler et al. v. Commissioner, 23 B. T. A. 1091; Petroleum Exploration v. Commissioner, 23 B. T. A. 890 and P-M-K. Petroleum Company v. Commissioner, 24 B. T. A. 360.

While the question is not free from doubt, and there is much force in the defendant's contention that the well itself—the hole in the ground—does not wear out by use, as do tools, derricks, pumps, pipes, and other component parts of a completed producing oil well, we think the decisions of the Board of Tax Appeals in the cases cited are a correct interpretation of both the statute and the regulations. The drill hole of a producing oil well through which the oil is brought to the surface of the ground is a necessary and inseparable portion of the physical property of a completed oil well. It, at least, bears as direct a relation to the casing, pumps, pipes, derricks, and other necessary equipment of the completed well as it does to the oil reserves under the ground. The hole in the ground it seems is as susceptible to depreciation by wear and tear through use as it is to "depletion" as that term is used in the revenue acts.

In United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 610, 71 L. Ed. 1054, the court said: "The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment. As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed."

Article 201 of Regulations 69 provides that:

"Depletion of Mines, Oil and Gas Wells; Depreciation of Improvements.—Sections 214 (a) (9) and 234 (a) (8) provide that taxpayers shall be allowed as a deduction in computing net income in the case of natural deposits a reasonable allowance for depletion of mineral and for depreciation of improvements. * * *

"The essence of these provisions of the statute is that the owner of mineral deposits, whether freehold or leasehold, shall, within the limitations prescribed, secure through an aggregate of annual depletion and depreciation deductions the return of either the cost of his property, or the value of his property on the basic date plus, in either case, subsequent allowable capital additions * * * but not including land values for purposes other than the extraction of minerals. * * *

"When used in these articles (201–237) covering depletion and depreciation—* * *

"(c) A 'mineral property' is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface only as is reasonably expected to be underlaid with the mineral. The value of a mineral property is the combined value of its component parts.

"(d) A 'mineral deposit' refers to minerals only, such as the ores only in the case of a mine, to the oil only in the case of an oil well, and to the gas only in the case of a gas well, and to the oil and gas in the case of a well producing both oil and gas. The value of a mineral deposit is the value of the mineral property, less the value of the plant and equipment, and less the value of the surface of the land for purposes other than mineral production. The cost of a mineral deposit is that proportion of the total cost of the mineral property which the value of the deposit bears to the value of the property at the time of its purchase." . . .

While in essence the deduction for depletion does not differ from the deduction for depreciation, United States v. Ludey, supra, they are separate and distinct allowances; the depletion deduction applying to natural resources (oil in the case of an oil well), the depreciation deduction applying to improvements.

We think that the drill hole of a producing oil well is an improvement within the meaning of the statute, and that it is also physical property within the meaning of articles 223 and 225 of the Regulations. A producing oil well is undoubtedly a physical property. Only by the most refined process of reasoning can it be said that the derricks, casings, pumps, pipes, buildings, and other equipment constitute parts of such physical property and are improvements upon the costs of which depreciation deductions may be had, and that the drill hole in which the casing is placed and through which, by the use of the pumps and other equipment, the oil is brought from beneath the ground to the surface is not a physical property or an improvement within the meaning of the statute and the regulations.

The physical property comprising a completed oil well includes every item of improvement or equipment necessary for the extraction of the oil from the ground. Without the drill hole the well is incomplete and would be a useless thing, in fact would not be an oil well. Can it reasonably be said, then, that this essential item of the component parts of the physical property comprising a completed producing oil well is not itself a physical property, or that it is not an improvement? We think not.

The expenses incurred by the plaintiff in drilling its wells, including wages, fuel, repairs, freight, hauling, and materials, have been capitalized. Under the statute and the regulations hereinbefore discussed these expenditures are returnable through depreciation.

The plaintiff is entitled to depreciation deductions claimed, and under the findings is awarded a judgment for $19,096.12, with interest thereon, as provided by law. It is so ordered.

BOOTH, Chief Justice, and WHALEY, Judge, concur.

LITTLETON, Judge (dissenting).

I am of the opinion that plaintiff is entitled to recover only $8,420.21 resulting from an additional deduction for 1926 of $76,614.03 for depreciation of camp buildings, etc., well equipment, and materials, as set forth in finding 13. This deduction appears to have been disallowed by the commissioner for lack of proper segregation of certain costs. I think the development costs, totaling $18,907.74, finding 15, which were early and preliminary costs incident to the leases and preliminary to drilling operations, paid out during 1922 to 1924, inclusive, for expenses and for interest and taxes, and charged on its books as depreciation on equipment, furniture, and fixtures; and the drilling costs, amounting to $71,321.21, which amount is exclusive of the costs of all casings and the placing of same, the costs of all tools, machinery, and equipment used in such drilling and the costs of erecting or installing such tools or equipment, are comprehended in the depletion allowance for exhaustion of the oil supply and may not, therefore, be included in the amount to be used in determining the reasonable allowances for depreciation. An oil well, that is, the hole in the ground, like real estate, is not naturally subject to depreciation through wear and tear. Its usefulness is exhausted as the oil is removed, but exhaustion is comprehended in the allowance for depletion. In the ordinary case the statute provides for a reasonable allowance for "the exhaustion, wear and tear of property used in the trade or business," but in the case of oil wells the statute, section 234 (a) (8) of the Revenue Act of 1926, 26 USCA § 986 (a) (8), in providing for a deduction for depletion and for wear and tear, states that: "In the case of * * * oil and gas wells * * * a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the commissioner with the approval of the Secretary." The costs which may be included in the amount to be used for the purpose of computing the allowance for depreciation must be costs in relation to physical property which is subject to depreciation through wear and tear as distinguished from exhaustion. The deduction for depletion is a special application of the general rule allowing a deduction for exhaustion. The depreciation charge represents the reduction during the year of the capital assets through wear and tear of the plant used. The depletion is likened to the using up, i. e., exhaustion, of raw material in a manufacturing process. The terms "de-

860

pletion" and "depreciation" are mutually exclusive; together they are the equivalent of the phrase "exhaustion, wear, and tear"; in the case of an oil well, however, the exhaustion is described as depletion. In view of the particular language of section 234 (a) (8) relating to oil and gas wells, I think exhaustion was intended to be included in the depletion allowance of 27½ per cent. of the gross income from the property during the taxable year, and only compensation for wear and tear of physical property allowed in addition thereto. The Regulations[3] prescribe this rule for the administration of the statute. They are expressly authorized and impliedly approved by Congress. They are reasonable and essential to the practical administration of the statute and are valid. Brewster v. Gage, 280 U. S. 327, 335, 50 S. Ct. 115, 74 L. Ed. 457; Fawcus Machine Co.

[3] Reg. 45, art. 223; 62, art. 223; 65, art. 225; and 69, art. 223.

v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397.

GREEN, Judge (also dissenting).

I concur in the dissenting opinion of Judge LITTLETON. It seems to me that the expense of boring a hole in which a pipe is to be placed in event oil is discovered is of the same nature as expenses otherwise made to change the earth or the surface thereof which is being used in connection with an oil well. If the surface of the ground required considerable expense in leveling, no one would contend that the cost incurred should be included in determining depreciation. The expense in boring the hole was incurred in fitting the place where the hole was located to receive the apparatus used in operating an oil well, and the loss suffered when the hole becomes useless does not appear to me to be in the nature of depreciation as the word is used in the statute.