**BURNET, Commissioner of Internal Revenue, v. PETROLEUM EXPLORATION.**

**No. 3316.**

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1932.

Andrew D. Sharpe, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Chester A. Gwinn and Charles E. Lowery, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for petitioner.

Robert Ash, of Washington, D. C. (Leland E. Fiske, of Tulsa, Okl., on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and GLENN, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals reported in 23 B. T. A. 890.

The pertinent facts, about which there is no dispute, as found by the Board of Tax Appeals, are as follows:

"The petitioner [the taxpayer] is a corporation organized on September 25, 1916, under the laws of the State of Maine, and its principal office is at Sistersville, W. Va. * * *

"The parties hereto have submitted the following stipulation of facts:

"'1. On December 31, 1924, the undepreciated investment of Petroleum Exploration

in equipment in oil wells amounted to $475,-975.02.

" 2. During the years 1925, 1926 and 1927 Petroleum Exploration capitalized on its books of account the total cost of new productive oil wells drilled, such charges representing amounts paid for equipment put into the wells, amounts paid to drilling contractors for drilling the wells, amounts paid for freight and haulage of the equipment, and amounts paid for labor in installing the equipment in the wells, as follows:

| "Year | Cost of equipment | Cost of drilling wells, hauling and placing equipment | Total cost of completed producing wells |
|---|---|---|---|
| 1925 | $121,303.03 | $49,640.17 | $170,943.20 |
| 1926 | 15,882.88 | 52,994.14 | 68,887.02 |
| 1927 | 56,626.31 | 2,659.26 | 59,285.57 |

" 3. The productive life of all producing wells, the total cost of which was capitalized as shown in paragraph No. 2, is more than one year.

" 4. Depreciation has been claimed by the petitioner and allowed by the Commissioner at a unit production rate based on the length of life of the oil deposits.

" 5. The Commissioner, in making his computation of depreciation, has added to his depreciation schedules the cost of the equipment added each year, as shown in paragraph No. 2, but has not added the cost of drilling wells, hauling and placing the equipment.

" 6. Instead, the cost of drilling wells, hauling and placing the equipment, as shown in paragraph No. 2, has been added to the cost depletion schedules by the Commissioner; but depletion has been allowed on a statutory percentage basis (27½ per cent. of gross income, not to exceed 50 per cent. of net income) and is not based on cost.

" 7. The petitioner, in making its computation of depreciation as shown in its "Form O", has added the total cost of completed wells, including equipment, drilling, hauling and placing the equipment, to its depreciation schedules, no part of the cost of the wells being added to the cost depletion schedules.

" 8. If petitioner's method of computing depreciation be sustained by the Board, namely, by adding to the undepreciated investment shown in paragraph No. 1 the total cost of completed wells as shown in paragraph No. 2 (no part of such cost being added to the depletion schedules) an increase in the depreciation allowance will result as follows:

"Depreciation Allowance

| "Year | Computed by Commissioner's method | Computed by petitioner's method | Increase in depreciation allowance if petitioner's method be sustained |
|---|---|---|---|
| 1925 | $82,826.35 | $89,369.57 | $ 6,543.22 |
| 1926 | 68,105.24 | 78,192.46 | 10,087.22 |
| 1927 | 66,015.91 | 75,161.03 | 9,145.12 |

" 9. If petitioner's method of computing depreciation be sustained, as shown in paragraph No. 8, a decrease in the depletion allowance will result as follows:

"Depletion Allowance

| "Year | Computed by Commissioner's method | Computed by petitioner's method | Decrease in depletion allowance if petitioner's method be sustained |
|---|---|---|---|
| 1925 | $302,012.87 | $300,860.43 | $1,152.44 |
| 1926 | 277,900.70 | 275,191.94 | 2,708.76 |
| 1927 | 168,874.41 | 167,486.55 | 1,387.86 " |

The statutes and Treasury Regulations involved are:

"Revenue Act of 1926, c. 27, 44 Stat. 9, 14, 41 [§§ 204 (c) (2), 234 (a) (7, 8), 26 USCA §§ 935 (c) (2), 986 (a) (7, 8)].

"Sec. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that— * * *

"(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence;

"(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a

reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

"Treasury Regulations 69

"Art. 221. Depletion in the case of oil and gas wells.—Under section 204 (c) (2), in the case of oil and gas wells, a taxpayer may deduct for depletion an amount equal to 27½ per cent. of the gross income from the property during the taxable year, but such deduction shall not exceed 50 per cent. of the net income of the taxpayer (computed without allowance for depletion) from the property. In no case shall the deduction computed under this paragraph be less than it would be if computed upon the basis of the cost of the property, or its value at the basic date, as the case may be. In general, 'the property,' as the term is used in section 204 (c) (2) and this article, refers to the separate tracts or leases of the taxpayer.

"Art. 223. Charges to capital and to expense in case of oil and gas wells.—Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may, at the option of the taxpayer, be deducted as a development expense or charged to capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling non-productive wells may at the option of the operator be deducted from gross income as a development expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells.

"An election once made under the provisions of this article will control the taxpayer's returns for all subsequent years. Where deductions for depreciation or depletion have either on the books of the taxpayer or in his returns of net income been included in the past in expense or other accounts, rather than specifically as depreciation or depletion, or where capital expenditures have been charged to expense in lieu of depreciation or deple-

tion, a statement indicating the extent to which this practice has been carried should accompany the return.

"Art. 225. Depreciation of improvements in the case of oil and gas wells.—Both owners and lessees operating oil and/or gas properties will, in addition to and apart from the deduction allowable for depletion as hereinbefore provided, be permitted to deduct a reasonable allowance for depreciation of physical property, such as machinery, tools, equipment, pipes, etc., so far as not in conflict with the option exercised by the taxpayer under article 223. The amount deductible on this account shall be such an amount based upon its cost or other basis equitably distributed over its useful life as will bring such property to its true salvage value when no longer useful for the purpose for which such property was acquired. Accordingly, where it can be shown to the satisfaction of the Commissioner that the reasonable expectation of the economic life of the oil or gas deposit with which the property is connected is shorter than the normal useful life of the physical property, the amount annually deductible for depreciation on such property may be based upon the length of life of the deposit."

The sole question presented is whether the capitalized cost of drilling oil wells and of hauling and placing equipment in the wells is recoverable through allowances for depreciation or depletion. The Commissioner of Internal Revenue determined that this cost was properly recoverable through an allowance for depletion. Upon hearing before the Board of Tax Appeals, this determination of the Commissioner was reversed.

The Treasury Regulations cited above are authorized by Congress, and, while the Secretary of the Treasury cannot by a regulation alter or amend the law (South Carolina Produce Ass'n v. Commissioner (C. C. A.) 50 F.(2d) 742), if within and in accordance with the acts of Congress such regulations have all the force and effect of statutes. Burnet v. Moore Cotton Mills Co. (C. C. A.) 49 F.(2d) 59, and authorities there cited; Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397.

It has been repeatedly held by this court, and there is no authority to the contrary, that the action of the Commissioner of Internal Revenue in determining a tax assessment is prima facie correct, and the burden is on the objecting taxpayer to show the action of the

Commissioner to be erroneous. Lehman v. Tait (C. C. A.) 58 F.(2d) 20, and authorities there cited.

Here the taxpayer was given the option under the provisions of article 223 of Regulations 69 to either charge the expenditures in question to development expense or charge them to capital account *returnable through depletion*. (Italics ours.) This option was exercised by the taxpayer by charging the expenditures to capital account, and by so acting the taxpayer must have done so with the full knowledge that such sums so charged must come back through depletion and not depreciation. This is the plain provision of the Regulation.

It is true that article 225 of Regulations 69 permits an allowance for depreciation of physical property, but only so far as not to conflict with the option exercised by the taxpayer as to charging such expenditures to capital account, and such allowance is given only for such physical property as "machinery, tools, equipment, pipes," etc. The hole of an oil well itself certainly would not come within this classification, and could not be held to be physical property.

We are here concerned with the cost of putting down the hole through which oil is recovered from under the ground. In the oil well the hole in the ground performs a function, with respect to the oil brought out of the well, similar to that performed by the shaft or tunnel in a mine with respect to the ore brought out of the ground. Neither the shaft nor the hole can be, strictly speaking, termed improvements. They simply serve as conduits through which the mineral is recovered. The bare hole in an oil well does not deteriorate or depreciate as does a piece of machinery or as does the casing with which it is lined, and has no service life other than the period necessary to exhaust the body of the mineral which it reaches. Once the mineral is exhausted, the hole is useless and of no value whatever, such as may be possessed by the casing which may be pulled or the machinery which may be removed to be used elsewhere. It seems to us that the proper and logical method of returning to the taxpayer the expense of drilling the hole is through depletion rather than depreciation, this entirely aside from the implied agreement to accept depletion when the taxpayer exercised the option to charge the expense to capital account.

The allowance for depletion was intended by Congress to restore to the taxpayer his capital investment with respect to the oil and gas wells as that investment is used up or exhausted.

In Lynch, Executrix, v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 276, 69 L. Ed. 660, the Supreme Court said: "It is said that the depletion allowance applies to the physical exhaustion of the ore deposits, and since the title thereto is in the lessor, he alone is entitled to make the deduction. But the fallacy in the syllogism is plain. The deduction for depletion in the case of mines is a special application of the general rule of the statute allowing a deduction for exhaustion of property. While respondent does not own the ore deposits, its right to mine and remove the ore and reduce it to possession and ownership is property within the meaning of the general provision. Obviously, as the process goes on, this property interest of the lessee in the mines is lessened from year to year, as the owner's property interest in the same mines is likewise lessened. There is an exhaustion of property in the one case as in the other. * * *"

If the cost of the hole is included in depreciation allowances as well as cost of machinery, tools, etc., which have a service life in no way connected with or dependent upon the length of time it takes to exhaust the mineral, then there is no expense whatever connected with an oil well left to be returned through depletion, and the regulation (article 223) is robbed of any meaning, except as to the exploration of the property.

In Burnet v. Thompson Oil & Gas Co., 283 U. S. 301, 51 S. Ct. 418, 419, 75 L. Ed. 1049, the court said:

"It is clear that Congress intended that the lessee of an oil well should be entitled to a reasonable allowance for depletion based upon cost or March 1, 1913 value. It did not however attempt to prescribe a formula for ascertaining it, but expressly delegated that function to the Commissioner of Internal Revenue, who was to make rules and regulations to that end. Pursuant to this authority, regulations were made, which required the deduction of depletion theretofore sustained in ascertaining the capital remaining in any year recoverable by depletion deductions. * * *

"The decision in the Ludey Case [United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054] has been adopted in the later statutes as affecting sales of capital assets, but the provision for annual depletion allowance has remained substantially unchanged. This in itself is persuasive evidence that Con-

gress has approved the executive construction embodied in the regulations."

■ The long and consistent administrative construction, especially when it is, as here, clearly an admissible one and consistent with the purpose of the statute, should not be set aside unless plainly wrong. Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 422, 74 L. Ed. 1051; Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397; Williams v. Burnet, Commissioner (App. D. C.) 59 F.(2d) 357.

A consideration of this question leads to the conclusion that the elements calling for both depletion and depreciation are present in an oil well. The outlay for geological study and survey is directly connected with the location or discovery of the oil deposit, and would seem to be not subject in any way to depreciation, but should be allowed under depletion when capitalized. So with the hole in the ground. It cannot be withdrawn or inventoried as having any independent value or resold as may be done with casing, tools, or machinery. As the wages for labor and other expenses in connection with the transportation and work of a geologist in prospecting an oil field are a part of the cost of discovery or development, so the wages for labor in drilling a well are such a part of the cost of discovery or development as are not susceptible of depreciation.

Section 234 of the act of 1926, above set out, provides for "depletion and for depreciation of improvements," and goes on to leave the rules and regulations to be prescribed "by the commissioner with the approval of the Secretary." Such rules and regulations have been prescribed, and are apparently reasonable and just. Under these regulations, the cost of the drill hole of an oil well, and as it seems to us to be natural, is not subject to depreciation, but should be allowed for, especially when capitalized, under the head of depletion.

The Board of Tax Appeals rests its decision in the instant case on its decision in the case of A. T. Jergins Trust Co., 22 B. T. A. 551, where a similar question was presented; and the Court of Claims in the recent case of Dakota-Montana Oil Co. v. United States, 59 F.(2d) 853 (decided July 5, 1932), has by a majority opinion reached the same conclusion as the Board. We are, however, of the opinion that the regulations are reasonable, and, having been in force for a long time, they should be sustained, particularly where the taxpayer, as in this case, availed itself of the identical regulations to capitalize expenditures for intangibles, thus accepting the provision that such expenditures should be returned through allowances for depletion. The taxpayer cannot accept the benefits of the regulation and reject the accompanying obligation.

■ In conclusion, we wish to say that, if any of the expense of wages, hauling, etc., in connection with the casing, operating tools, machinery, etc., are included in the Commissioner's allowance for depletion, it is our opinion that such expense should be depreciated. It is impossible for us to tell from the record the fact as to this question, but, as to allowances for all expense of putting down the drill hole, the Commissioner was right in making such allowances under the head of depletion. It follows that the decision of the Board of Tax Appeals must be reversed.