**BURNET, Com'r of Internal Revenue, v.
HUTCHINSON COAL CO.**

No. 3432.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

Andrew D. Sharpe, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Arthur Clark, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

Arthur S. Dayton, of Charleston, W. Va. (Melvin G. Sperry, of Clarksburg, W. Va., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals. The decision of the Board will be found in 24 B. T. A. 973. A number of issues were involved in the decision, but the only question raised on appeal is whether that portion of money paid under the annual minimum royalty clause of a mining lease, that is in excess of the royalty paid on coal actually mined during the year of payment, may be deducted by the lessee from gross income for that year, where the lessee received a credit and acquired the right to mine coal therefor in subsequent years.

Taxes for the year 1921 are involved. There is no dispute as to the facts.

In the year 1916, the respondent, as lessee, entered into agreements leasing coal underlying certain tracts of land in Harrison county, W. Va., for such term as necessary to remove the leased coal therefrom. Under the terms of the lease the respondent agreed to mine not less than 350,000 tons during the year in question (1921), and in case this amount was not mined, to pay the royalties provided for said minimum amount.

The agreements provided as follows:

"* * * And in the event the amount of coal actually mined during any one year shall be less than said minimum hereinabove provided, for which payment is herein agreed to be made, the Lessee shall have the right in and during any succeeding year of this lease, after the minimum output for such succeeding year shall have been mined, or after it shall have paid for all of the recoverable coal in said demised premises, to mine and remove, without additional compensation, the amount of coal so paid for during such former years of this lease and not theretofore mined by it.

"But all coal actually mined and removed in excess of the minimum hereinabove agreed, shall be paid for at the rates hereinabove provided, on the 25th day of the month next succeeding that in which it shall have been mined. * * *

"It is further mutually agreed that all rentals and royalties herein agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessor, and the lessor reserves all of the rights of a landlord under the laws of the State of West Virginia, for the collection of the same. * * *"

The lease further provided that in the event of failure of the lessee to pay any "rent or royalty" when due, or to in any other way comply with the terms of the lease, then the lease would be terminated and the lessor could, after notice, re-enter and take possession of the leased premises and all improvements.

Respondent mined from the leased property in 1921 a total of 215,379 tons of coal, falling short 134,621 tons of the minimum amount agreed to be mined for that year. The respondent paid the royalty on this shortage amounting to $16,154.62 and sought to deduct this amount from its gross income in its return for that year. This deduction

was denied by the Commissioner of Internal Revenue, but was allowed by the Board of Tax Appeals.

In its opinion the Board said:

"Under the fourth issue petitioner contends that certain additional or minimum royalties paid during the taxable year represent ordinary and necessary expenses deductible in computing net income. These amounts have been treated by respondent as capital expenditures. The amounts in question represent sums paid by petitioner under the terms of certain leases as royalties in excess of those paid upon coal actually produced, these additional payments being made under minimum production requirements of the contracts obligating petitioner to pay royalties computed upon a certain amount of production whether this amount was reached or not, these additional royalties to be credited upon future production in excess of minimum requirements for such future year.

"In this connection it has been held that royalties are rents and not the purchase price of minerals in place. They are payments required to be made for the continued use and enjoyment of the property rights to which title is not being acquired. The minimum amount is required to be paid each year, for the use, possession and enjoyment for that year, with the qualification or contingency that if in a future year the coal mined exceeded the amount of the minimum required for such year, the excess of the minimum payment for a previous year, would be credited against coal mined in such year. If this were in fact an advance royalty, we think that the advance payment should be spread over the period of years when the coal is mined, but, as we pointed out in Jamison Coal & Coke Co., 24 B. T. A. 554, we do not so consider it. There are too many uncertainties and contingencies. At the time of the minimum royalty payment it could not be foretold whether the excess payment over actual production of the year could ever be availed of. We think that on the authority of the above decision, as well as our decision in the Bogle Case, 5 B. T. A. 541 (affirmed by the Circuit Court of Appeals, 26 F.(2d) 771), the minimum royalties paid each year are deductible when paid. United States v. Biwabik Mining Co., 247 U. S. 116 [38 S. Ct. 462, 62 L. Ed. 1017]; Lynch v. Alworth-Stephens Co., 267 U. S. 364 [45 S. Ct. 274, 69 L. Ed. 660]; Estate of Mary E. McCahill, 2 B. T. A. 875; Royal Collieries Co., 1 B. T. A. 369. * * * "

The contention of the petitioner is that the portion of the money paid in the year 1921, as minimum royalty, in excess of the amount attributable to the tonnage mined in 1921, for which respondent had the right to remove coal in subsequent years, was not an expense of carrying on its business and is not properly deductible from gross income. That this excess payment vested in the taxpayer an interest in the coal in place, as to which he was entitled only to a deduction for depletion.

The taxpayer contends that the portion of the money paid under the minimum royalty clause that was in excess of the payment for the coal actually mined was in the nature of rental and was a proper deduction from gross income in the year in which it was paid.

The reverse of this question has been before this court in Strother v. Commissioner, 55 F.(2d) 626, 629, which case was affirmed by the Supreme Court in Bankers' Pocahoutas Coal Co. v. Burnet, 287 U. S. 308, 53 S. Ct. 150, 77 L. Ed. ——. In this case it was held, both by this court and by the Supreme Court, that regardless of whether or not a lease of coal constituted a sale of coal in place, the royalty, when received by the lessor, was taxable income.

In an able opinion, Judge Soper of this court said, in Strother v. Commissioner, supra: "It does not follow, as the taxpayer assumes, that the royalties cease to be income under the acts of Congress because the leases are sales and the royalties are part payment of the purchase price under the law of West Virginia. It is obvious, as the Supreme Court has pointed out, that something more is involved under a mining lease than a sale and delivery of valuable property. Before the business is complete, there must take place the whole process of locating, extracting, and preparing the ore for market. This is a manufacturing process, and in this aspect the royalties are seen to be income of the business, and as such subject to taxation. The federal courts must respect the local laws of property laid down by the courts of the state, but the power of Congress to tax must be judged by the realities of the situation and not by the logic of state rules of property, pushed inexorably to their extreme. * * * "

And in Bankers' Pocahontas Coal Co. v. Burnet, supra, Mr. Justice Stone said: "The question whether payments of bonus and royalties from the lessee to the lessor of an oil lease are income within the meaning of the revenue laws taxing income, or a return of capital as upon a sale of the oil, was recently before this Court in [No. 26] Burnet v. Har-

mel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. ——. Although it was contended there, as it is here, that by state law the title to the mineral content of the leased land passed to the lessee upon execution of the lease, it was held that this characterization of the transaction in the local law did not affect the conclusion that the payments were gross income subject to tax, after the deductions allowed by the taxing act. The considerations which led to the conclusion that bonus and royalties paid to the lessor of Texas oil lands are taxable income and not a conversion of capital, as upon a sale of capital assets, are equally applicable to West Virginia coal leases, whether the title to the coal passes to the lessee in place at the date of the lease, or only upon severance by the lessee."

The same process of reasoning followed by the courts in reaching the conclusion that royalties, when received by the lessor, constitute taxable income, would inevitably lead to the conclusion that such royalties were properly deductible from gross income when paid by the lessee.

Attorneys for petitioner admit this to be true except as to the amount representing the difference between the amount of royalty paid for coal actually mined and the total amount paid under the minimum clause of the lease. It is contended that this excess payment should be treated as is a bonus paid for a lease [Baton Coal Co. v. Commissioner (C. C. A.) 51 F.(2d) 469; U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347], and should be allowed for by depletion.

The payment of a minimum royalty partakes, to a great degree, of the nature of a payment for rent. The lease here provides that the royalties "shall be deemed and treated as rents reserved upon contract by the lessor." The minimum royalty provision of the lease covers more than the mining of coal. The right to erect the plant, including the tipple and other buildings that constitute the plant; the right to erect houses for the miners; the rights of way and other surface rights and the right to use timber found on the land; these and other considerations enter into the fixing of a minimum amount to be paid. The payments by the lessee here were not merely a purchase price of realty, but they were for the privilege of all the various activities that enter into the process of manufacturing carried on in the mining of coal. Strother v. Commissioner, supra.

The minimum royalty was a recurring annual charge, as is an annual rental, and regardless of future contingencies, must be paid or the lease is forfeited. It is in effect a payment made for the continued enjoyment of the property. Once paid that part of the minimum royalty not represented by coal actually mined can never be recovered except in the exercise of a vague and indefinite future right to mine the coal without payment of royalties. Recovery under these conditions is too vague and indefinite to be considered in deciding questions of taxation. Logan v. Commissioner (C. C. A.) 42 F.(2d) 193; Malleable Iron Range Co. v. United States, 62 Ct. Cl. 425; S. Naitove & Co., Inc., v. Commissioner, 59 App. D. C. 53, 32 F.(2d) 949; Highland Milk Condensing Co. v. Phillips (C. C. A.) 34 F.(2d) 777.

As was said by the Board of Tax Appeals, if the payment here under consideration were advance royalty or bonus paid for a lease it should be spread over the period of years estimated as necessary to exhaust the coal, but as it is the payment of an excess as a minimum royalty, recurring annually, the uncertainty that it will ever be in any way recovered or realized on is so great that it should be treated as an expense for the particular year in which it is paid.

The contingencies that would defeat the recapture of any part of this excess payment are numerous. The lessee might make default in the terms of the lease, in which event the lessor could repossess the property and the taxpayer would lose the payment; conditions surrounding the coal industry might become such that the coal could not be sold for a price equal to the cost of production and the lease would necessarily have to be surrendered; the coal vein might "pinch out"; fire might destroy the mine; labor troubles might prevent operation for a long period of time. In the event of the happening of any of these and many other contingencies the taxpayer could never recover any part of the excess payment.

We do not think that the cases relied on by petitioner, dealing with bonus payments for leases or the renewal of leases, advance royalties and expenditures made for additions to leased property, are controlling of the question presented here. The payment made here was not one for which the taxpayer was to receive the benefit over a definite number of subsequent years but was an obligation recurring each year.

It is contended by petitioner that the ruling of the Treasury Department on this point is in accord with long-settled practice and should not be disturbed where it is consistent with the language of the act. Mason

v. Routzahn, 275 U. S. 175, 48 S. Ct. 50, 72 L. Ed. 223; Burnet, Commissioner, v. Petroleum Exploration (C. C. A.) 61 F.(2d) 273. We do not think this practice is of such long standing or sufficiently within either the language or spirit of the act (see Revenue Act 1921, § 234, 42 Stat. 254) as to render it sacred when justice and fair dealing to the taxpayer requires it to be overruled.

We are of the opinion that the Board of Tax Appeals reached the right conclusion, and its decision is accordingly affirmed.